[Crim. No. 21445. Feb. 11, 1981.]

In re WAYNE E. CATALANO on Habeas Corpus.

[Crim. No. 21446. Feb. 11, 1981.]

In re WILLIAM GEYER on Habeas Corpus.

2

**COUNSEL**

Levy & Goldman and Henry R. Fenton for Petitioners.

Michael D. Bradbury, District Attorney, Ray Sinetar, Assistant District Attorney, Robert C. Bradley, Chief Deputy District Attorney, and Robert J. Bayer, Deputy District Attorney, for Respondent.

**OPINION**

**TOBRINER, J.**—Petitioners (hereafter defendants), authorized representatives of the carpenters' union, entered a construction site to inspect safety conditions and prepare a shop steward's report. When they refused to leave upon request by an agent of the landowner, defendants were arrested and convicted of trespassing. (Pen. Code, § 602, subd. (k)(1).)[1] Maintaining that the record demonstrates that their conduct did not violate the trespass statute, defendants petition us for writs of habeas corpus.[2]

---

[1]Penal Code section 602 provides that: "Every person who willfully commits any trespass by any of the following acts is guilty of a misdemeanor:

". . . . . . . . .

"(k) Entering any lands under cultivation or enclosed by fence, belonging to, or occupied by, another, or entering upon uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to the mile along all exterior boundaries and at all roads and trails entering such lands without the written permission of the owner of such land, his agent or of the person in lawful possession, and

"(1) Refusing or failing to leave such lands immediately upon being requested by the owner of such land, his agent or by the person in lawful possession to leave such lands, or

"(2) Tearing down, mutilating or destroying any sign, signboard, or notice forbidding trespass or hunting on such lands, or

"(3) Removing, injuring, unlocking, or tampering with any lock on any gate on or leading into such lands, or

"(4) Discharging any firearm."

Except as otherwise indicated, all statutory references in this opinion are to the Penal Code.

[2]Although convicted in a joint trial in municipal court, defendants have filed separate petitions for habeas corpus. We have consolidated the cases for oral argument and opinion.

We first observe that defendants, sentenced to a fine or imprisonment, are under sufficient restraint that they may seek relief by habeas corpus. Turning then to the merits of the petition, we explain that under California statutes and decisions on labor relations, union representatives who enter a jobsite to conduct lawful union activity do not violate the criminal trespass laws by refusing to leave upon an arbitrary request of the owner. Defendants' entry to perform a safety inspection and prepare a steward's report is an accepted and traditional practice in the construction industry, which does no harm to the economic or property interests of the landowner; such conduct, we conclude, is lawful union activity which does not expose the union representative to prosecution for trespass.

The district attorney here suggests that defendants were requested to leave the jobsite and subsequently convicted of trespassing only because one defendant talked to a worker who did not belong to defendants' union. As we explain, however, defendants' conviction does not rest upon any theory that either of them exceeded the scope of proper union activity, but upon the trial court's mistaken conclusion that union representatives had no right to remain on the jobsite to conduct lawful union activities.

We conclude that because defendants were engaged in lawful union activities, they did not violate section 602. We accordingly issue habeas corpus to direct their discharge from custody.

1. *Proceedings in the courts below.*

Defendants were charged with trespass in violation of section 602, subdivision (k)(1), which prohibits refusing to leave property upon request from the owner or his agent. Defendants admitted refusing to leave, but maintained that they had a right to remain on the property to carry out a safety inspection and complete other union activity.

Since the case presented primarily an issue of law, trial was brief.[3] The parties stipulated to the prosecution's case, that "on September 25, 1978, each of the defendants ... entered ... [the] Stonecraft Homes

---

[3]The parties recorded the municipal court trial and submitted that recording as a settled statement in the appellate department of the superior court. The settled statement is part of the record submitted by defendants in support of their petition for habeas corpus.

jobsite . . . and refused and failed to leave such land upon being requested to do so by the owner of such land or his agent."

Defendants testified that they are business representatives and shop stewards for the Ventura District Council of Carpenters. That union had collective bargaining agreements with three subcontractors doing construction work on a jobsite in Simi Valley where Stonecraft Homes was building 30 houses. The agreements expressly provided that union representatives could enter the jobsite to conduct safety inspections, and further stipulated that union members could not work on a jobsite on which a union respresentative was not allowed. The union did not, however, have any agreement with Stonecraft Homes, the owner of the property.

Defendant Catalano, newly appointed shop steward for the Stonecraft Homes jobsite, entered the property to conduct a safety inspection and to prepare a steward's report indicating which union members were presently working at that location. Defendant Geyer, the former shop steward, accompanied Catalano to show him the project. Both had written authorization from the union to conduct safety inspections.

The defendants drove to the superintendent's shack. Finding no one there, they proceeded to the project. After defendants had inspected several houses under construction, an agent of the owner asked them to leave the property; Catalano replied they would leave when they finished the steward's report. The agent departed, threatening to call the police. Defendants completed the report, spoke for a few minutes to two workers on coffee break concerning the union health and pension program, then returned to their car to leave the property.

When defendants arrived at the gate they found John Randall, the owner of Stonecraft Homes, and two police cars blocking the exit. After the police declined to arrest defendants, Randall effected a citizen's arrest.

Defendants further testified that it was customary for union business agents to enter construction sites to conduct safety inspections and prepare steward's reports. Agents of three other unions testified they had entered the Stonecraft Homes jobsite to inspect the property and check on working conditions; they agreed that such inspections and reports were customary in the construction trades.

In rebuttal, Randall claimed that on September 25 he saw defendant Catalano talking to a painter who was not a member of the carpenter's union, and had seen similar conduct by Geyer on past occasions. Catalano, recalled to the stand, denied talking to any painter. The trial court apparently considered the matter immaterial.

In an oral opinion, the court found that defendants were at the jobsite "to check on working conditions in compliance with safety regulations and to check the books of the various people on the job ... to find out whether there were union or non-union people working at the job." The court assumed, however, that defendants' failure to halt such activities and leave immediately on request violated section 602, subdivision (k)(1), unless defendants could claim the protection of section 552.1.[4] The court held, however, that section 552.1 authorized safety inspections and other lawful union activity only on industrial property subject to posting under the industrial trespass law (§§ 552-555).[5] Finding that the Stonecraft Homes jobsite was not property sub-

---

[4]Section 552.1 states that "This article [the industrial trespass law] does not prohibit:

"(a) Any lawful activity for the purpose of engaging in any organizational effort on behalf of any labor union, agent, or member thereof, employed or formerly employed in any place of business or manufacturing establishment described in this article, or for the purpose of carrying on the lawful activities of labor unions, or members thereof.

"(b) Any lawful activity for the purpose of investigation of the safety of working conditions on posted property by a representative of a labor union or other employee group who has upon his person written evidence of due authorization by his labor union or employee group to make such investigation."

[5]Section 554 describes the property subject to posting under the industrial trespass law. It reads as follows:

"Any property, except that portion of such property to which the general public is accorded access, may be posted against trespassing and loitering in the manner provided in Section 554.1, and thereby become posted property subject to the provisions of this article applicable to posted property, if such property consists of or is used, or is designed to be used, for any one or more of the following:

"(a) An oil well, oil field, tank farm, refinery, compressor plant, absorption plant, bulk plant, marine terminal, pipeline, pipeline pumping station, or reservoir, or any other plant, structure, or works, used for the production, extraction, treatment, handling, storage, or transportation, of oil, gas, gasoline, petroleum, or any product or products thereof.

"(b) A gas plant, gas storage station, gas meter, gas valve, or regulator station, gas odorant station, gas pipeline, or appurtenances, or any other property used in the transmission or distribution of gas.

"(c) A reservoir, dam, generating plant, receiving station, distributing station, transformer, transmission line, or any appurtenances, used for the storage of water for the generation of hydroelectric power, or for the generation of electricity by water or steam or by any other apparatus or method suitable for the generation of electricity, or for the handling, transmission, reception, or distribution of electric energy.

"(d) Plant, structures or facilities used for or in connection with the rendering of

ject to posting under that act, it concluded that the protective reach of section 552.1 did not extend to defendants' activities.[6]

The trial court accordingly found defendants guilty of trespass in violation of section 602, subdivision (k)(1), and sentenced them to a fine of $100 (plus a $30 assessment), or to county jail at a rate of one day for each $30 or fraction thereof. Defendants appealed to the appellate department of the superior court, which affirmed the conviction on the ground that "the ... construction site ... does not constitute property subject to posting within the meaning of section 554 of the Penal Code. Consequently, the exemption for union activities provided for in section 552.1 of the Penal Code is inapplicable."

Defendants asked the appellate department to certify the case for transfer to the Court of Appeal; the appellate department denied the request on the ground that it was filed one day too late.[7] Defendants individually petitioned the Court of Appeal for habeas corpus. When that court denied their petitions defendants filed for habeas corpus in this court. We issued an order to show cause and stayed execution of the sentence pending disposition of the matter.

---

telephone or telegraph service or for radio-broadcasting.

"(e) A water well, dam, reservoir, pumping plant, aqueduct, canal, tunnel, siphon, conduit, or any other structure, facility, or conductor for producing, storing, diverting, conserving, treating, or conveying water.

"(f) The production, storage or manufacture of munitions, dynamite, black blasting powder, gunpowder, or other explosives.

"(g) A railroad right-of-way, railroad bridge, railroad shop, railroad yard, or other railroad facility.

"(h) A plant and facility for the collection, pumping, transmission, treatment, outfall, and disposal of sanitary sewerage or storm and waste water, including a water pollution or quality control facility.

"(i) A quarry used for the purpose of extracting surface or subsurface material or where explosives are stored or used for that purpose."

[6]Defendants argued that the construction site falls within section 554 because it contains electrical wires, telephone wires, and gas pipelines. The section, however, refers to property which is "used" for the purpose of electrical transmission, telephone service, and gas distribution. We believe that language indicates that the section applies to property in which the enumerated use is a primary purpose of the property, as in the case of high voltage transmission wires, distribution stations, etc. It cannot reasonably be applied to property used primarily for other purposes merely because that property had electrical and telephone service, and perhaps gas and water service. Under defendants' interpretation, virtually all commercial and residential property in the state would fall within the scope of the industrial trespass law.

[7]Defendants' failure to file a timely request for certification does not bar relief by petition for habeas corpus. See *In re Wallace* (1970) 3 Cal.3d 289, 292-293 [90 Cal.Rptr. 176, 475 P.2d 208], granting habeas corpus although defendants failed to request certification by the appellate department.

2. ██    *Habeas corpus lies to review defendants' contention that section 602, subdivision (k)(1), does not prohibit their conduct.*

Our decision in *In re Zerbe* (1964) 60 Cal.2d 666 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840] establishes defendants' right to petition for habeas corpus. In *Zerbe*, a union picket was convicted of trespass under a related subdivision of section 602, and sentenced to a fine of $26.25 or five days in jail. We ordered him discharged from custody, stating that "a defendant is entitled to habeas corpus if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct." (P. 668.) That principle justifies our review, on writ of habeas corpus, of defendants' contention that their conduct did not violate section 602, subdivision (k)(1).

Because our opinion in *Zerbe* did not explain that Zerbe was sentenced to a fine or jail in the alternative, no published California opinion now holds explicitly that a defendant so situated is under sufficient custodial constraint to qualify for the writ. Therefore we shall briefly explain here why we conclude, in accord with the implied holding of *Zerbe*, that such a defendant may seek relief by habeas corpus.

██    Although the chief use of habeas corpus has been to obtain the release of persons held in actual, physical custody, "[h]istory, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." (*Jones v. Cunningham* (1963) 371 U.S. 236, 240 [9 L.Ed.2d 285, 289, 83 S.Ct. 373, 92 A.L.R.2d 675].) Thus a prisoner released on bail, although not actually confined, is eligible to seek habeas corpus (*In re Petersen* (1958) 51 Cal.2d 177 [331 P.2d 24]); similarly a parolee may apply for that writ (*Jones v. Cunningham, supra,* 371 U.S. 236; *In re Marzec* (1945) 25 Cal.2d 794, 797 [154 P.2d 873].)

Two decisions relating to prisoners at large on their own recognizance bear particularly on this issue. In *In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179], we rejected cases distinguishing between release on bail and release on recognizance, noting that a prisoner released without bail is nevertheless under restraints not shared by the general public. (P. 613.) Denial of the writ of habeas corpus to

such a prisoner, we observed, would merely postpone relief; the prisoner could upon return to actual custody immediately file his petition and seek release on his own recognizance pending decision on that petition. (P. 614.) We concluded that a person released on his own recognizance was under sufficient constructive custody to permit him to apply for habeas corpus.

In 1973 the United States Supreme Court considered the same issue. Relying in part on our decision in *Smiley*, the court issued habeas corpus on behalf of a prisoner at large on his own recognizance. Habeas corpus, the court stated, is not a "'static, narrow, formalistic remedy' ... but one which must retain the 'ability to cut through barriers of form and procedural mazes.'" (*Hensley* v. *Municipal Court* (1973) 411 U.S. 345, 349-350 [36 L.Ed.2d 294, 299, 93 S.Ct. 1591].) A prisoner released on his own recognizance, the court stated, is subject to restraint not shared by the public at large; denial of relief would be pointless since it "would do no more than postpone this habeas corpus action until petitioner had begun service of his sentence." (P. 352 [36 L.Ed.2d, p. 300].) "Plainly, we would badly serve the purposes and the history of the writ to hold that under these circumstances the petitioner's failure to spend even 10 minutes in jail is enough to deprive the [court] of power to hear his ... claim." (Pp. 352-353 [36 L.Ed.2d, p. 301].)

The reasoning of the foregoing cases leads directly to the conclusion that defendants before us are under sufficient restraint to permit them to seek relief by habeas corpus. They are, first, subject to restraints not shared by the public generally: the judgment below, stayed by order of this court, required them to pay a fine within 30 days (which has now elapsed); if they fail to do so "the court shall ... immediately order the arrest of the defendant[s]." (§ 1205.) A refusal to issue the writ, moreover, would accomplish nothing but delay; defendants could submit to arrest and immediately apply for relief. ██ We therefore conclude that the present defendants are under sufficient custodial restraint to permit them to apply for a writ of habeas corpus.

3. ██ *A union representative who remains on a jobsite to complete lawful union activity although requested to leave by the owner does not violate section 602, subdivision (k)(1).*

We noted earlier that a defendant is entitled to habeas corpus if the trial record, without material factual dispute, demonstrates that the

statute under which he was convicted did not prohibit his conduct. (See p. 6, *ante.*) We therefore turn to the question whether section 602, subdivision (k)(1), prohibits the conduct of defendants.

We begin with the observation of the well known fact that most work under collective bargaining agreements in the construction industry occurs on property owned by third parties. If union representatives, attempting to police the safety and security provisions of these agreements, may be prosecuted for trespass by third party landowners, the collective bargaining agreement becomes unenforceable and a dusty dead-letter. As we shall explain, the statutory interpretation underlying these criminal convictions is both illogical and inconsistent with the view consistently expressed by the Legislature and this court: that general trespass statutes may not be used to frustrate legitimate union activities on private premises, at least in instances in which no significant property interest is threatened.

Recognizing the traditional practice in the construction industry, the parties agreed at oral argument before this court that union representatives have a right to enter a jobsite to perform safety inspections and to police the collective bargaining agreement, so long as they do not interfere with the work in progress or exceed the scope of proper union activities.[8] It follows from this agreed proposition, defendants contend, that a union representative engaged in proper union activity does not violate section 602 if he refuses to leave the jobsite until he finishes his business there. The district attorney did not dispute this contention.[9]

As we shall explain, the Legislature drafted section 602, the basic trespass statute, for general application and not specifically with union activities in mind. Specific provisions of both section 602 and related trespass statutes, however, demonstrate an overall legislative policy that the broad trespass statutes are not intended to apply to otherwise lawful union activity. Thus we cannot read each subdivision of the trespass law

---

[8]The district attorney at one point did suggest that defendants could have been charged with violating section 602, subdivision (*l*), which declares it a misdemeanor unlawfully to "enter and occupy real property." A violation of this subdivision, however, requires occupation of the property, a "nontransient, continuous type of possession." (*People* v. *Wilkinson* (1967) 248 Cal.App.2d Supp. 906, 910 [56 Cal.Rptr. 261].) Defendants' conduct does not fall within this definition. (Compare *People* v. *Wilkinson, supra,* which held overnight camping insufficient occupation to violate subdivision (*l*).)

[9]The district attorney confined his argument to claiming that defendants exceeded the scope of proper union activity, an argument we reject in part 5 of this opinion.

in isolation but must apply the general principle of statutory construction that statutes are to be read in order to harmonize the statutory scheme and not to produce absurd results. Numerous decisions of this court, which we shall review, have applied that general principle to the subject of union activities on the jobsite. In accord with these decisions, we conclude that regardless of whether property is "posted industrial property," property subject to posting, or other, less sensitive property, trespass statutes do not apply to lawful union activity.

*In re Zerbe, supra*, 60 Cal.2d 666, the earliest of the crucial decisions establishing California labor policy on this issue, involved the relationship between section 602 and the industrial trespass law, sections 552 through 555.5. The latter act establishes a stringent trespass law to restrict entry upon industrial properties that pose an extreme danger to the casual trespasser.[10] At the same time, however, the industrial trespass law provides a specific exemption for lawful union conduct. Section 552.1 states that the industrial trespass law does not prohibit "the lawful activities of labor unions, or members thereof"; in particular, it does not prohibit "[a]ny lawful activity for the purpose of investigating the safety of working conditions on posted property by a representative of a labor union.[11]

In *Zerbe*, a union agent entered railroad property during a dispute with an employer served by the railroad. He was convicted of trespassing in violation of section 602, subdivision (*l*), which prohibits "entering and occupying real property." Although railroad property was described in section 554 as industrial property "which may be posted," the railroad had not in fact posted "no trespassing" signs. Because the property thus was not "posted industrial property" (*Cotton* v. *Superior Court* (1961) 56 Cal.2d 459, 463 [15 Cal.Rptr. 65, 364 P.2d 241]), the trial court held Zerbe was not protected by section 552.1.

We granted Zerbe's petition for habeas corpus and overturned the conviction. Although the property entered by Zerbe was not literally posted industrial property, we reasoned that it would be anomalous to impose penal liability on Zerbe because the landowner had failed to post the property against trespass. Despite the fact that section 552.1 does not on its face bar prosecution under the general trespass statute,

---

[10]Section 554, which lists the properties which may be posted under the industrial trespass law, is quoted in full in footnote 5, *ante.*

[11]Section 552.1 is quoted in full in footnote 4, *ante.*

we held that "Sections 552-555.5 of the Penal Code *must be read together with subdivision (l) of section 602*, and that subdivision must be treated as also subject to the labor activity exception when, as here, unposted property of the type designated in the posting law is entered." (Pp. 668-669.) (Italics added.)[12]

One year later, in *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union* (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921], we considered union activity on property which was *not* subject to posting under the industrial trespass law. The issue before us was whether an employer could enjoin peaceful union picketing in a shopping center. Reversing the injunction, we stated that: "The Legislature has expressly declared that the public policy of California favors concerted activities of employees for the purpose of collective bargaining or other mutual aid or protection. [Citations.] Morever, the Legislature has enacted this policy into an exception to the criminal trespass law. (Pen. Code, § 552.1.) Thus recently we reversed the conviction of a labor union official for picketing on the property of a nonparticipant in the labor dispute. Construing section 552.1, which excepts from the criminal trespass statute any 'lawful activity for the purpose of engaging in any organizational effort on behalf of any labor union ...' we concluded that '... the Legislature in dealing with trespasses ... has specifically subordinated the rights of the property owner to those of persons engaging in lawful labor activities.' (*In re Zerbe* (1964) 60 Cal.2d 666, 668.) The policy of the state as expressed

---

[12]The trial court interpreted *Zerbe* to signify that section 552.1 grants union representatives immunity from prosecution under section 602 only when they entered *industrial* property subject to posting, an interpretation which would create the anomaly that union representatives would have greater freedom of action when they enter dangerous industrial property than when they enter other property. Attempting to divine why the Legislature would permit "lawful union activity" only on dangerous industrial property, he surmised that the Legislature thought access to such property was so limited that the union would have no reasonable alternative way to communicate with the employees.

This reasoning appears erroneous. The issue of reasonable alternative means of communication turns on questions such as union access to off-premise parking areas, the proximity of the worksite to employees' residences, the difficulty of contacting employees at home, and similar matters. (See *Labor Board* v. *Babcock & Wilcox Co.* (1956) 351 U.S. 105 [100 L.Ed. 975, 76 S.Ct. 679].) There is no reason to believe that employees working on posted industrial property are harder to reach than workers on a construction site or other property not subject to posting under the industrial labor act. Moreover, the exemption of section 552.1 is clearly not intended solely to facilitate union-employee communication. Section 552.1 authorizes safety inspections, and such inspections require access to the jobsite regardless of the ease of communicating with workers at their homes.

in the Labor Code accords with that embodied in federal legislation." (P. 769.) (Fns. omitted.)

Finally, in our recent decision in *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317 [158 Cal.Rptr. 370, 599 P.2d 676], we again ruled that lawful union activity at the jobsite was immune from prosecution under section 602. Although the union picketing in *Sears* was lawful activity under the Moscone Act (Code Civ. Proc., § 527.3), Sears argued that it was entitled to enjoin that picketing on the privately owned sidewalk surrounding its store because the picketing "constituted a criminal trespass under subdivisions (j), (k), or (*l*) of Penal Code section 602." (P. 330, fn. 9.) In rejecting that argument, we replied that "it is unnecesary to embark upon a detailed analysis of that section, for union activity which is authorized by state labor law constitutes an exception to the criminal trespass statutes." (*Id.*)

At oral argument in *Sears* the parties called our attention to a 1978 amendment to section 602, subdivision (n), which provides that a person does not violate that subdivision by refusing to leave property on the request of the owner if the person is "engaged in lawful labor union activities which are permitted to be carried out on the property by the California Agricultural Labor Relations Act . . . or by the National Labor Relations Act."[13]

When the 1978 amendment to subdivision (n) was enacted, it was already well settled that lawful union activity at the jobsite did not violate criminal trespass statutes. (See *Labor Board* v. *Babcock & Wilcox Co., supra*, 351 U.S. 105; *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union, supra*, 61 Cal.2d 766; *In re Zerbe, supra*, 60 Cal.2d 666.) Thus we stated in *Sears* that the amendment to subdivision (n) "merely codifies existing law; indeed, union activity pro-

---

[13]Section 602, subdivision (n), as amended in 1978 prohibits: "Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer and the owner, his agent, or the person in lawful possession thereof, or (2) the owner, his agent, or the person in lawful possession thereof; provided, however, that clause (2) of this subdivision shall not be applicable to persons engaged in lawful labor union activities which are permitted to be carried out on the property by the California Agricultural Labor Relations Act, Part 3.5 (commencing with Section 1140) of Division 2 of the Labor Code, or by the National Labor Relations Act."

We note that defendants in the present case were charged with a violation of subdivision (n), but acquitted of that charge. It is not clear whether subdivision (n)'s express exemption for lawful union activity led to the acquittal.

tected by state or federal labor law clearly does not violate any subdivision of Penal Code section 602."[14] (P. 331, fn. 9.)

The teaching of the decisions we have reviewed is clear: the general trespass statutes do not prohibit lawful union activity at the jobsite. Consequently, the validity of defendants' convictions does not depend, as the trial court assumed, on whether the property they entered was subject to posting under the industrial trespass law. Neither does it turn on whether the conduct falls within the proscription of section 602, subdivision (k)(1), since as we have seen, that proscription does not apply to lawful union activity. Instead, the issue turns simply on whether defendants' conduct was "lawful" activity within the meaning of our decisions in *Schwartz-Torrance* and *Sears, supra*, and thus exempt from prosecution under section 602.

4. ■ *Union representatives who, in accord with a collective bargaining agreement, conduct safety inspections and prepare steward's reports at a construction jobsite, are engaged in lawful union activity exempt from prosecution under section 602.*

We turn to the question whether the activities for which defendants entered the jobsite—to conduct a safety inspection and prepare a steward's report—constituted "lawful union activity" exempt from the criminal trespass laws. To answer that question, we look to the customary and accepted practices of the construction industry, and to a balance of the respective interests of the union and the landowner. Both

---

[14]Defendants in the present case were convicted under subdivision (k)(1) which, like subdivision (n), makes refusal to leave property on the request of the owner unlawful, but unlike (n) was not amended to provide an express exemption for lawful union activity. The relationship between subdivisions (k) and (n) is not entirely clear. Subdivision (k) applies to "any lands under cultivation or enclosed by fence" or any "uncultivated or unenclosed lands where signs forbidding trespass are displayed. . . ." Subdivision (n) applies to "land, real property, or structures." Thus both sections appear to apply to fenced real property such as the jobsite involved in the present case. A comparison of the language of subdivisions (k) and (n), however, suggests that the former was intended to apply to rangeland, farmland, and similar open property, and that subdivision (n) might be the more appropriate provision to apply to the construction jobsite at issue in the present case.

In any case, the exception for lawful union activities cannot be confined to prosecutions under subdivision (n). Whether the 1978 amendment to that subdivision codified existing law, as we stated in *Sears*, or created new law, it would clearly defeat the legislative purpose if union activities immunized from prosecution under that amendment could still be prosecuted under the many other subdivisions of section 602.

inquiries in the present case indicate the lawfulness of defendants' actions.

Undisputed evidence shows that safety inspections and stewards' reports are customary in the industry. The carpenters' union in this case had entered into agreements with three subcontractors authorizing such inspections and reports. Representatives of the carpenters' union and other unions had visited the jobsite for such purposes on many occasions. The landowner knew of such entries and, in all probability, was aware of the custom in the construction industry of permitting such entry by union representatives.

We note, moreover, another factor which must be placed on the scales: the importance of allowing employees and their representatives to bargain for, and police, safe and healthful workplaces. Collectively bargained safety and health provisions have little meaning if employee representatives can be ousted from the jobsite.[15] Such a bar cannot be erected in an industry such as construction where working conditions may be extremely hazardous;[16] under the legislative policy as expressed in the statutes and as articulated in the cases, union agents may not be subjected to criminal liability for protecting workers against dangers such as these.

5. *Defendants' conviction cannot be sustained on the theory that their conduct exceeded the scope of a lawful union activity*

Only lawful union activity is exempt from prosecution for trespass. As defendants acknowledge, if a union representative goes beyond the scope of lawful union activity by interfering with the construction work or damaging the property, the owner may properly insist that he leave. Failure to leave, under these circumstances, would violate section 602, subdivision (k)(1).[17]

---

[15]At trial, the judge suggested that union access was unnecessary because "if they thought there was something wrong there, why didn't they pull their people off the job and strike the place." While the union may or may not have been legally entitled to strike the subcontractors, it seems to us that this is the alternative that our labor laws are constructed to avoid. One of the principal reasons for fostering collective bargaining is to avoid the public disruption, inconvenience, and expense associated with labor disputes.

[16]Section 552.1 implicitly recognizes that inspection of dangerous property by authorized union inspectors is lawful union activity.

[17]The representative would also violate subdivision (n) since such conduct is not protected by national or state labor law. Moreover, by damaging the property or

At oral argument the district attorney emphasized the testimony of Randall, the property owner, who claimed he saw defendant Catalano talk to a painter (a nonmember of the carpenters' union). The district attorney asserted that this evidence showed that Catalano went beyond the scope of proper union activity and interfered with the construction work. As we explain, however, defendants' conviction does not rest upon that theory.

First, the prosecution presented a stipulated case in chief which did not mention the conversation with the painter, but relied solely on the fact that defendants failed to leave upon request.

Second, Randall testified only that he saw Catalano talk to a painter. He did not testify that Catalano interfered with any work in progress, that he requested defendants to leave because Catalano talked to the painter, or even that the conversation occurred before defendants were asked to leave.

Third, neither the trial court's oral opinion nor the opinion of the appellate department asserts that defendants exceeded the scope of proper union activities. Neither mentions the claimed conversation between Catalano and the painter.

Finally, both Geyer and Catalano were convicted of violating section 602, subdivision (k)(1). There is no evidence on this occasion that Geyer talked to the painter or in any way exceeded the scope of lawful union activity.

In short, the conviction cannot be sustained on the ground advanced by the district attorney. It rests instead on the mistaken premise that union representatives conducting safety inspections and other lawful union activity on "nonindustrial" property must leave that property immediately on the owner's request. We reject that premise, and hold that union representatives performing lawful union activity at the jobsite do not violate section 602 by refusing to accede to an arbitrary request by the owner. Accordingly, we conclude that defendants' conduct came within the exception to section 602 barring prosection for lawful labor activities and thus that section 602, subdivision (k)(1), did not prohibit that conduct.

---

interfering with its use, the representative might violate other subdivisions of section 602 regardless of whether he left upon request.

Thus the case coalesces into a simple but important ruling. That holding emanates from the decisions of this court and from the statutory recognition of that principle by the Legislature: a labor union representative who enters upon a jobsite to engage in lawful union activity does not illegally trespass upon the land. If, however, he does not confine himself to such lawful union activity he forfeits such protection and subjects himself to liability.

Let writs of habeas corpus issue directing that defendants be discharged from custody. (See *In re Zerbe, supra*, 60 Cal.2d 666, 670.)

Bird, C. J., Mosk, J., and Newman, J., concurred.

Richardson, J., concurred in the result.

**CLARK, J.,** Concurring—I agree with the majority that Penal Code sections 552 to 555.5 and section 602 relating to trespasses on property must be harmonized and read together. Thus, exemptions for union activity in sections 552.1 and 602, subdivision (n), should be read into section 602, subdivision (k)(1). Those exemptions reflect legislative determination to permit particular labor union activity on specified business and agricultural properties. It would be unreasonable to conclude the Legislature intended such activities to be lawful by specifically exempting them from one trespass statute and at the same time intended them to be criminal under another trespass statute. (See *In re Zerbe* (1963) 60 Cal.2d 666, 668-669 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840].)

While I agree the exemptions must be read into section 602, subdivision (k)(1), I find no justification for expanding the exemptions beyond the legislative determination.

Section 602, subdivision (n), exempts "lawful labor union activities which are permitted to be carried out on the property by the California Agricultural Labor Relations Act ... or by the National Labor Relations Act." The exemptions are limited to permitted conduct under either of the two enactments. Subdivision (n) should not be read as exempting conduct as to which the enactments are inapplicable. The National Labor Relations Board dismissed a charge of employer unfair labor practice, and it does not appear that petitioners' conduct is protected by either enactment. Accordingly, the subdivision (n) exemption is not here applicable.

Similarly, the section 552.1 exemption is inapplicable to petitioners' conduct. Sections 552-555.5 prohibit loitering near or trespassing upon posted land containing certain oil, gas, water, electrical, telephone, telegraph, radio, railroad and sewage facilities and land used as a quarry or to store or produce explosives. Section 552.1 exempts from the prohibition lawful labor activity for organizational purposes or safety investigations. The sections thus reflect legislative determination to authorize entries upon only enumerated properties for organizational and safety purposes.

The sections do not reflect a legislative intent to permit entries for organizational and safety purposes on other business properties such as offices, factories, retail establishments and residential construction sites. Had the Legislature intended that union officials should have a right to enter offices, factories, retail establishments and residential construction sites, it could have provided generally for such right. We may not reasonably conclude the Legislature intended such result by adopting an exemption applicable to other properties.

Nothing in *In re Zerbe, supra*, 60 Cal.2d 666, warrants extending the section 552.1 exemption to property which is not enumerated in section 554. In that case, an official of a labor union engaged in picketing a factory sought to establish a picket at the junction of a main railroad and a spur track serving the factory. After he refused to leave the property, the official was arrested and convicted of violating a general trespass statute—former Penal Code section 602, subdivision (*l*). Granting a writ of habeas corpus, this court concluded that the exemption for union activities in section 552.1 was to be applied in prosecutions for violation of section 602, subdivision (*l*), and that because a railroad right-of-way was among enumerated properties on which lawful labor union activity could be conducted, the petitioner did not violate the subdivision (*l*). (60 Cal.2d at pp. 668-670.) There is nothing in *Zerbe* to suggest that the union activity exemption of section 552.1 extends to property not enumerated in section 554.

Similarly, *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 330-331 [158 Cal.Rptr. 370, 599 P.2d 676], holds merely that conduct permitted under the Moscone Act (Code Civ. Proc., § 527.3) does not constitute a criminal trespass under general trespass statutes.[1] *Schwartz-Torrence Investment Corp. v. Bak-*

---

[1]While I dissented in *Sears*, my dissent was directed to the issue whether the conduct involved was protected by the Moscone Act, and I agreed with the majority that if the

*ery & Confectionary Workers' Union* (1964) 61 Cal.2d 766 [40 Cal. Rptr. 233, 394 P.2d 921] and *In re Lane* (1969) 71 Cal.2d 872 [79 Cal. Rptr. 729, 457 P.2d 561] are premised on the ground that the union activity in those cases was protected by the First Amendment.[2]

In sum, the rule of the *Sears* and *Schwartz-Torrence* cases is that labor activities permitted by statute or constitutionally protected may not furnish a basis for conviction under general trespass law. However, those cases do not stand for a general authority for this court to make exceptions from the general trespass law for labor activities which the majority members of this court may believe should be "lawful."

## OTHER POINTS

I concur with the majority insofar as they hold under the evidence in this case the union officials had a contractual right based on collective bargaining contract and practice in the industry to enter the construction site for safety inspection and steward report, and that the evidence does not establish that the union officials exceeded that right. A person who has an enforceable contractual right to be on the premises and who has not exceeded the right, does not become a trespasser in refusing a request to leave. I also concur in the majority opinion as to the availability of the writ of habeas corpus.

---

conduct was protected, it would not constitute a trespass. (25 Cal.3d at p. 335.)

[2]The constitutional doctrine enunciated by those cases was repudiated in *Hudgens* v. *NLRB* (1976) 424 U.S. 507, 517, 521 [47 L.Ed.2d 196, 205, 207-208, 96 S.Ct. 1029].