[No. H009203. Sixth Dist. Oct. 27, 1992.]

In re MELCHOR P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MELCHOR P., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication only as to part I, the first paragraph of part II (Facts), and parts III B. and IV.

**COUNSEL**

Rebecca J. Foust for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Morris Beatus and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COTTLE, Acting P. J.—**

### I

#### INTRODUCTION

In the published portion of this opinion, we are asked to determine whether the Legislature intended in Vehicle Code section 13202.5 to penalize youthful offenders with drivers licenses who commit certain drug or alcohol related offenses more severely than youthful offenders without drivers licenses who commit the same offenses. We conclude the Legislature intended they be punished equally.[1]

### II

#### FACTS

Minor Melchor P. was found to be a person described by Welfare and Institutions Code section 602 and was found to have committed the following offenses: one count of possession for sale of a controlled substance (Health & Saf. Code, § 11351) and two counts of sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)). The court imposed a maximum term of commitment of seven years and four months in the California Youth Authority (CYA). It also ordered that Melchor's driving privilege be delayed for three years pursuant to Vehicle Code section 13202.5, subdivision (a).

---

[1] In the unpublished portion of this opinion, section III A, we address and reject the contention that the court abused its discretion in imposing a California Youth Authority commitment.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## III

### DISCUSSION

A.  *Did the Court Abuse its Discretion in Committing Melchor to CYA?\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B.  *Did the Court Err in Delaying for Three Years Melchor's Ability to Apply for a Driver's License Pursuant to Vehicle Code Section 13202.5?*

█  Melchor contends the court erred in delaying his driving privilege for three years. He points out that the first sentence of Vehicle Code section 13202.5, subdivision (a)[3] applies only to persons already licensed. That sentence mandates a one-year suspension for each offense committed. The second sentence of section 13202.5, subdivision (a) applies to persons not yet licensed. It refers only to a one-year delay. Based on the apparent discrepancy between the two sentences, Melchor argues he may receive only a one-year delay in his driving privilege regardless of the number of offenses he committed. As we shall explain, neither the language of the statute nor the legislative intent supports Melchor's argument.

Section 13202.5, subdivision (a) provides: "For each conviction of a person for any offense specified in subdivision (d), committed while the person was under the age of 21 years, but 13 years of age or older, the court shall suspend the person's driving privilege for one year. If the person convicted does not yet have the privilege to drive, the court shall order the department to delay issuing the privilege to drive for one year subsequent to the time the person becomes legally eligible to drive. However, if there is no further conviction for any offense specified in section 13202.5, subdivision (d) in a 12-month period after the conviction, the court, upon petition of the person affected, may modify the order imposing the delay of the privilege. For each successive offense, the court shall suspend the person's driving privilege for those possessing a license or delay the eligibility for those not in possession of a license at the time of their conviction for one additional year." Subdivision (d) includes the three controlled substance offenses Melchor committed. Section 13105 specifies that a " 'conviction' includes a finding by a judge of a juvenile court . . . that a person has committed an offense . . . ."

---

*See footnote, *ante*, page 788.
[3]All further statutory references are to the Vehicle Code unless otherwise specified.

■ "The starting point in statutory construction is to read and examine the text of the act and draw inferences concerning the meaning from its composition and structure." (2A Sutherland, Statutory Construction (5th ed. 1992) § 47.01, p. 136, fn. omitted.) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) This requires reading each sentence not in isolation but "in order to harmonize the statutory scheme and not to produce absurd results." (*In re Catalano* (1981) 29 Cal.3d 1, 10-11 [171 Cal.Rptr. 667, 623 P.2d 228].) "It is also a rule of statutory construction that if there exists an uncertainty or ambiguity in a statute, qualifying words, phrases or clauses are construed as referring to the words, phrases and clauses immediately preceding . . . ." (*Addison v. Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 496 [138 Cal.Rptr. 185]; see also *Oliva v. Swoap* (1976) 59 Cal.App.3d 130, 138 [130 Cal.Rptr. 411].) "[I]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.)

■ Applying these rules of construction, it is clear that Melchor's interpretation fails. The second sentence must be read in the context of the first sentence and in light of the entire statutory scheme. It cannot be read in isolation. For example, the second sentence begins, "If the person . . . ," but it does not define who is a "person." Without reference to the first sentence, one would apply the "plain meaning rule" and "person" would mean any human being. By examining the text of the entire statute, however, it is clear that the Legislature included as persons only those individuals who committed the enumerated offenses while under the age of 21, but 13 years of age or older. The second sentence continues, "If the person convicted . . . ," but does not specify any particular offenses. Read in isolation, this sentence would mandate delay of driving privileges for any person convicted of any offense. Again, this could not have been the result intended by the Legislature. To give meaning to the sentence, one must look to the antecedent sentence, "the words, phrases and clauses immediately preceding . . . ." (*Addison v. Department of Motor Vehicles, supra,* 69 Cal.App.3d 486.) Applying this rule, "convicted" means convictions for offenses specified in section 13202.5, subdivision (d).

In fact, the structure and composition of the statute suggests that the introductory phrase of the first sentence was intended to precede both the main clause in the first sentence and the entire second sentence. An "or" between the two sentences would have made Melchor's arguments moot. But

"bad grammar," as one commentator points out, "does not vitiate a statute if the legislative intent is clear." (2A Sutherland, Statutory Construction, *supra*, § 47.01, p. 136.) Here it is clear that the Legislature intended the introductory phrase to define who was included within the statute's purview and in what circumstances (for each conviction of the enumerated offenses). In contrast, the main clause in the first sentence and the entire second sentence merely instruct the court how to penalize the two categories of persons (i.e., those with licenses and those not yet licensed) affected by the statute.

Additionally, the legislative history of the current version of section 13202.5 establishes a clear intent to treat those with licenses and those without, and those who were driving at the time they committed the offense and those who were not, similarly. The original 1984 version of the statute applied only to minors found to have committed alcohol or substance abuse offenses *while* driving a motor vehicle.[4]

In 1987, the Orange County branch of Mothers Against Drunk Driving proposed, and Senator William Campbell sponsored, a bill (Sen. Bill No. 1300) to, inter alia, amend section 13202.5.[5] The Senate Third Reading of Senate Bill No. 1300 (as amended Aug. 25, 1988) explained that the revised section 13202.5: "Expands the number of offenses for which a minor may have his or her license suspended to include possession of prescription drugs without prescription; possession of dimethyl sulfoxide (DMSO); the sale, possession, or consumption of alcohol or drugs; possession of a false identification; vehicular manslaughter; and vessel manslaughter. [¶] 4) Authorizes the court to suspend the driver's license of a minor between the ages of 13 and 21 for the above listed offenses. [¶] 5) Eliminates the current alternative of a license restriction for conviction of the above listed offenses. [¶] 6) Increases the number and types of offenses, conviction of which must be reported to the Department of Motor Vehicles (DMV)." The same report noted under "Constitutional Issues" that the "bill would require suspension of a driver's license or delay in application for a driver's license for *offenses*

---

[4]That version provided, in pertinent part: "Upon conviction of a person for any offense specified in subdivision (d), committed while the person was under the age of 18 years and while driving a motor vehicle, the court may suspend or restrict the person's driving privileges on conditions that the court deems appropriate or, in the case of a person who does not yet have the privilege to drive, order that the privilege be delayed. The duration of the restriction, suspension, or delay shall be for up to one year or until the person reaches 17 years of age, whichever is longer . . . ."

[5]Other provisions of the bill provided for mandatory jail time for any person injuring another while driving a motor vehicle when his or her driving privilege had been suspended or revoked for drunk driving; expanded the list of offenses that a school principal must report to law enforcement to include all offenses involving alcohol or drugs; and granted civil immunity to school principals for reporting such offenses to law enforcement.

unrelated to driving. For example, this bill would provide that a minor involved in a situation constituting possession of an open container in a park is prevented from applying for a driver's license . . . ." (Sen. 3d Reading of Sen. Bill No. 1300 (as amended Aug. 25, 1988); italics in original.)

In a letter to Governor Deukmejian urging him to sign the bill, Senator Campbell explained that Senate Bill No. 1300 "contains a provision that would mandate a one year suspension of driving privileges for young people over 13 years and under 21 years who have been convicted of an alcohol other [*sic*] other illegal drug-related offense. The bill will also mandate a one year delay in obtaining a driver's license for unlicensed drivers 13 years or older, convicted of these offenses. Also, school officials will be permitted, if they so desire only, to report to law enforcement authorities alcohol or illegal drug-related suspensions or expulsions. These provisions indicate the seriousness of our need to stop drunk driving at the earliest possible age, by using perhaps the most important privilege a young person can have— driving a car—as leverage." As the above quoted legislative history makes clear, the 1988 amendments no longer distinguished between minors driving a vehicle and minors not driving a vehicle. The emphasis was on discouraging drug and alcohol use in general, which would have the beneficial effect of also discouraging driving under the influence.

In enacting the 1988 amendments to section 13202.5, the Legislature made the following findings: "(a) The Legislature finds and declares as follows: (1) It is unlawful to use, purchase, possess, or distribute controlled substances unless expressly permitted by law. [¶] (2) It is unlawful for any driver to be under the influence of drugs or alcohol. [¶] (3) Individuals who abuse drugs or alcohol demonstrate a dangerous disregard for the safe legal operation of motor vehicles. The risk is particularly acute for individuals under the age of 21. [¶] (4) The increased potential for teenage deaths in vehicle collisions and other nondriving accidents, homicides, and suicides, while being under the influence of drugs or alcohol, requires special attention in order to reduce the statewide youth fatality rate and to control unlawful and unsafe driving practices. [¶] (b) It is, therefore, the intent of the Legislature to enact this measure in an attempt to reduce the incidence of young drivers on the highways and roads of this state who, because of their use of alcohol or other illegal drugs, pose a danger to the health and safety of other drivers by all or a combination of the following methods: [¶] (1) To prevent use of motor vehicles by drivers under the age of 21 years by suspending their driving privileges for one year from the date of conviction, because a one year suspension of these drivers' privileges may provide a

means of deterring use of alcohol and other illegal drugs by these young persons. [¶] (2) to make the one year suspension of driving privileges a mandatory requirement for any person under the age of 21 years who has been convicted of possessing or using alcohol or other illegal drugs. [¶] (3) In order to discourage the possession and use of alcohol and other illegal drugs by potential drivers of motor vehicles, a one year delay of the ability to apply for a driver's license if the potential driver is 13 years of age or older and is convicted of possession or use of alcohol or other illegal drugs." (Stats. 1988, ch. 1254, § 1, pp. 4175-4176.) No distinction was drawn between the "one year" suspension in section 13202.5, subdivision (b)(1) and the "one year" delay in subdivision (b)(3).

In 1990, further amendments were made to section 13202.5. In the Legislative Counsel's Digest to Senate Bill No. 1756, existing law was described as "requir[ing] a court to suspend, restrict, or delay for one year the driving privilege of persons under age 21, but 13 years of age or older, convicted of offenses relating to alcohol or controlled substances." Again, no distinction was drawn between the penalties imposed on licensed drivers as compared with unlicensed drivers. Senate Bill No. 1756 "would require a court to suspend, restrict, or delay for one year the driving privilege of persons [under 21 but 13 years of age or older] who commit additional offenses [reckless driving with alcohol ("wet reckless"), drunk bicycling, and drunk boating] relating to alcohol and controlled substances when operating a vehicle, bicycle, or vessel . . . ." (Sen. Com. on Judiciary Report, Analysis of Sen. Bill No. 1756 (1989-1990 Reg. Sess.) Mar. 20, 1990, p. 1.) In Senate Bill No. 2635, the list of offenses was again expanded and the term "critical need to drive" was defined. These changes became effective January 1, 1992, and manifested a further attempt by the Legislature to use the driving privilege sanction as a means of discouraging alcohol and drug use among those between 13 and 21 years of age. (Stats. 1990, ch. 1696, § 3, pp. 6886-6887.)

Nothing in the legislative history suggests that the Legislature intended to punish individuals who were licensed more severely than individuals who were not. Likewise, the text of the statute, though imperfectly drafted, makes sense only if the introductory phrase ("for each conviction") is prefatory to both the main clause in the first sentence and the entire second sentence. Accordingly, Melchor's claim that the court erred in delaying his driving privilege for three years is without merit.

## IV

### DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, J., and O'Farrell, J.,* concurred.

---

*Judge of the Monterey Superior Court sitting under assignment by the Chairperson of the Judicial Council.