Filed 6/3/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Y.R., a Person Coming Under the Juvenile Court Law. | D063769 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J223215) |
| v. | |
| Y.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis, III, Judge. Reversed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

Y.R. appeals an order of the juvenile court finding that she committed vandalism (Pen. Code,[1] § 594, subd. (a) & (b)(1)) and trespass (§ 602, subd. (m)). Y.R. contends sufficient evidence does not support either finding. At trial, the prosecution proffered evidence to show Y.R. conspired with her boyfriend to commit a trespass, which would make her vicariously liable for the boyfriend's acts of vandalism as a natural and probable consequence of the trespass. Y.R. insists the evidence does not establish that she entered and occupied real property. Thus, she asserts the court could not make a true finding that she committed trespass. Without a finding of trespass, Y.R. maintains the true finding that she violated section 594, subdivisions (a) & (b)(1) as well as section 602, subdivision (m) is not supported by sufficient evidence. We agree and reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, Lucas Waldeck lived in a condominium complex located at 900 North Citrus Avenue, Vista, California. He was the president of the condominium's homeowners' association. Thus, he was tasked with taking care of the association's property, which included a clubhouse. The clubhouse had a recreation room, a kitchen, and two bathrooms. The bathrooms were kept locked and only residents or individuals accompanied by residents had permission to be inside. One bathroom only has an exterior door that leads to that bathroom. Residents can access the other bathroom by using a door that leads to both that bathroom and the rest of the clubhouse.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

On the afternoon of December 17, 2011, Waldeck entered the clubhouse to make sure the area was clean. Before he left, he locked the doors to both bathrooms. The doors were not damaged at that time.

The following day, both bathroom doors appeared to have been forced open. The doorjambs were splintered, and there were little pieces of wood on the floor.

Detective Robert Forbes of the San Diego County Sheriff's Office was assigned to investigate the incident of vandalism at the clubhouse. After about a year, law enforcement identified Y.R. as a potential suspect from DNA found at the scene. Forbes contacted and interviewed Y.R.

Y.R. told Forbes that she and Ricardo had gone to the clubhouse on several occasions to hang out because their parents forbid them to be together at their respective homes. They would stay at the clubhouse for a couple hours and talk. On one occasion, the cleaning woman caught them there and told them to leave. Y.R. told Forbes that the doors to the clubhouse usually were unlocked. However, on December 17, 2011, they were locked. Y.R. told Ricardo that she wanted to go inside because it was cold outside. She was on the phone when she heard a crash and saw that Ricardo had broken the first door open. She claimed that she did not know he was going to break the door. She then saw Ricardo break open the second door. After that, they spent several hours hanging out in the larger bathroom that went through to the clubhouse and in the second smaller bathroom. Y.R. told Forbes that she turned on the shower in the smaller bathroom that day and used the heat from the steam to stay warm.

3

Based on Forbes's investigation, the San Diego County District Attorney's Office filed a Welfare and Institutions Code section 602 petition alleging that Y.R. committed felony vandalism (§ 594, subds. (a) & (b)(l); count 1) and unauthorized entry of property (§ 602.5, subd. (a); count 2).

At the adjudication hearing, Y.R. testified that in December 2011, she was with Ricardo hanging out. Their parents did not allow them to be together, so they needed to find places to go without being seen. On December 17, 2011, they decided to go to a clubhouse near where Ricardo's friend used to live. They had been to that location once or twice before. When they arrived, they discovered the door was locked. While Y.R. was on her cell phone, Ricardo broke the door. He called to her and said something to the effect of, "come in" or "let's go in." She claimed she said, "No," and that he replied, "Let's just go home." Nevertheless, she ended up going into the bathroom with Ricardo and they hung out there for about an hour.

Y.R. claimed she did not see Ricardo break the first door and was surprised he had done that. She testified that she did not remember if he then broke another door. Later, however, she testified that she did not see him break either door. She did not remember where she was when the second door was broken. Y.R. denied telling Forbes that she had used the kitchen in the clubhouse. She did, however, tell Forbes that she and Ricardo had planned to cook there sometime.

Following the adjudication hearing, the juvenile court found the allegation of vandalism in count 1 true. At the request of the defense, the court amended count 2 to

4

conform to proof and found true the amended allegation that Y.R. committed misdemeanor trespass in violation of section 602, subdivision (m).

At Y.R.'s disposition hearing, the juvenile court reduced her felony vandalism conviction to a misdemeanor, continued her as a ward, and granted her probation.

Y.R. timely appealed.

### DISCUSSION

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence-- evidence that is reasonable, credible and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Reversal of a conviction for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The same standard of review applies to juvenile court proceedings. (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371.)

Section 602, subdivision (m) provides that a person commits misdemeanor trespass by "[e]ntering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession." Y.R. contends that there was insufficient evidence that she "occupied" the clubhouse bathroom on December 17, 2011.

In *People v. Wilkinson* (1967) 248 Cal.App.2d Supp. 906 (*Wilkinson*), the appellate department of the superior court construed the meaning of the term "occupying" in section 602, subdivision (m). In that case, four defendants had camped overnight on private ranch property. There was no evidence that they intended to stay longer than one night. At the time they were arrested the following morning, they were packing up the campsite. (*Wilkinson*, *supra*, at p. 908.) The defendants were convicted of trespass under section 602, subdivision (l), which was identical to the current subdivision (m).[2] The court found that the meaning of the term "occupy" was evident from the "statement of urgency" accompanying the passage of Assembly Bill No. 1732 in 1945, which states as follows: " 'This act is hereby declared to be an urgency measure. . . . A statement of the facts constituting such necessity is as follows: The tremendous increase in the population of this state in the last few years, resulting in a particularly heavy influx of people into the centers of defense industries and areas near military camps, has led to a serious housing shortage. In consequence, there has been an alarming increase in squatter occupancy of lands by lawless and irresponsible persons. This evil should be corrected at once. To enable the authorities to stamp out this epidemic, it is necessary that this act take immediate effect.' " (*Wilkinson*, *supra*, at p. 910.)

The court held that the legislative history thus demonstrates that the Legislature "intended the word 'occupy' to mean a nontransient, continuous type of possession" with "some degree of dispossession and permanency." (*Wilkinson*, *supra*, 248 Cal.App.2d

---

[2]    In 2003, the Legislature amended section 602, resulting in a renumbering of subdivision (l) to subdivision (m). (Stats. 2003, ch. 805, § 1.3, p. 4671.)

Supp. at pp. 910-911.)  Had the Legislature intended to prohibit mere transient possession of a property, it would have used a verb such as "be, remain, loiter, tarry, camp [or] stay" in lieu of "occupy."  (*Id.* at p. 910.)  The court thus concluded that "the transient overnight use of four 3 x 7 foot areas in a very large ranch for sleeping bags and campfire purposes was not the type of conduct which the Legislature intended to prevent when it used the word 'occupy.' "  (*Ibid*.; see also CALJIC No. 16.340 [elements of trespass under § 602, subd. (m) include proving that defendant "occupied some portion, or all thereof, continuously or until ousted therefrom" and defendant "entered and occupied the property with the specific intent to dispossess those lawfully entitled to possession from that portion of the property actually occupied"].)

Our high court cited *Wilkinson, supra,* 248 Cal.App.2d Supp. 906 with approval in *In re Catalano* (1981) 29 Cal.3d 1 (*Catalano*).  There, the defendants, who were union representatives, entered a construction site where union workers were working to conduct a safety inspection and prepare a report.  After they had inspected several houses under construction, an agent of the property owner asked them to leave the property; the defendants replied that they would leave when they had finished their report.  They completed the report, spoke for a few minutes to two workers, and then returned to their car to leave the property.  The property owner blocked their exit and affected a citizen's arrest.  (*Id.* at p. 5.)

The defendants were convicted under another subdivision of section 602, subdivision (k), and thus the primary issue before the Supreme Court was whether their convictions under that subdivision were proper.  However, the court also briefly took up

7

the question whether the defendants could have been charged under then subdivision (l). The court noted that "[a] violation of this subdivision . . . requires occupation of the property, a 'nontransient, continuous type of possession.' " (*Catalano*, *supra*, 29 Cal.3d at p. 10, fn. 8, quoting *Wilkinson*, *supra*, 248 Cal.App.2d Supp. at p. 910.) The court found that the defendants' conduct did not constitute the sort of nontransient possession of the property that would constitute a trespass in violation of then subdivision (l). (*Catalano*, *supra*, at p. 10.)

Recently, the Ninth Circuit considered a Title 42 United States Code section 1983 claim against the City and County of San Francisco in which the plaintiff alleged, in part, that San Francisco police officers lacked probable cause to arrest him for trespassing on the property of a housing cooperative. (*Edgerly v. City and County of San Francisco* (9th Cir. 2010) 599 F.3d 946, 950 (*Edgerly*).) In that case, two police officers, while on daytime patrol, observed the plaintiff standing inside the fence that surrounded the housing cooperative property, next to a playground area. Five minutes later, the police officers observed the plaintiff standing in the same location. (*Id*. at p. 952.) According to the officers, they knew that the plaintiff did not live at the cooperative and that he had previously been arrested for a drug offense at a nearby street corner. After questioning the plaintiff and determining that he had no specific reason to be there, the officers arrested him for trespassing in violation of section 602, subdivision (l) (now subd. (m)). (*Edgerly, supra,* at p. 952.) Relying on *Catalano, supra,* 29 Cal.3d 1 and *Wilkinson*, *supra,* 248 Cal.App.2d Supp. 906, the Ninth Circuit held that no reasonable officer would

have believed the plaintiff was "occupying" the cooperative property because they knew only that "he had been on the property for a matter of minutes."  (*Id*. at p. 954.)

Like the alleged trespassers in *Wilkinson, supra,* 248 Cal.App.2d Supp. 906, *Catalano, supra,* 29 Cal.3d 1, and *Edgerly, supra,* 599 F.3d 946, Y.R. made only transient use of the property on which she was alleged to be trespassing.  The evidence adduced at trial showed that Y.R. and Ricardo were in the clubhouse bathroom from somewhere between one hour to several hours.  Such a stay does not constitute "occupying" the clubhouse bathroom for purposes of section 602, subdivision (m).

However, the People argue that substantial evidence supports the juvenile court's true finding of trespass because Y.R. and Ricardo asserted "dominion and control over the bathrooms in the clubhouse."  They broke into and damaged two locked doors and used the shower and "trashed the place during the several hours they spent there."  Citing *Wilkinson*, *supra,* 248 Cal.App.2d Supp. at pages 910 to 911, the People further contend that this evidence shows Y.R. and Ricardo had " 'a nontransient, continuous type of possession' " with " 'some degree of dispossession and permanency.' "  However, the People fail to explain why Y.R.'s one to several hour stay in the bathroom and clubhouse was a more continuous type of possession than the overnight stay that the court in *Wilkinson*, *supra*, 248 Cal.App.2d Supp. 906 found not to satisfy the "occupying" requirement of the predecessor to section 602, subdivision (m).  Simply put, the People do not cite to any authority that supports their position that Y.R. occupied the clubhouse or its bathrooms.  Our independent research has uncovered none.  As such, on the record before us, we are compelled to follow *Wilkinson, supra*, 248 Cal.App.2d Supp. 906 and

9

*Catalano*, *supra*, 29 Cal.3d 1. Substantial evidence does not support the juvenile court's true finding of trespass.

Y.R. also challenges the sufficiency of the evidence to support the juvenile court's finding that she committed vandalism. Here, the prosecution proceeded on a conspiracy theory to support a true finding that Y.R. committed vandalism.

"A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416.) Also, conspiracy provides a basis for vicarious criminal liability. Thus, members of a conspiracy are liable not only for the target crime, but also for any crimes that are the natural and probable consequence of the target crime. (*People v. Zacarias* (2007) 157 Cal.App.4th 652, 657, 660.)

It is undisputed that Y.R. did not herself damage the bathroom doors, which led to a charge of vandalism. Instead, the prosecution argued Y.R. and Ricardo entered into a conspiracy to commit trespass and that vandalism was a natural and probable consequence of the trespass. As such, the target crime of the conspiracy was trespass. Because we determine that substantial evidence does not support the true finding of trespass then Y.R. could not have entered into a conspiracy to commit the alleged target crime here. Without a target crime, the prosecution cannot show that Y.R. and Ricardo entered into a conspiracy. Absent a conspiracy, the prosecution cannot prove that Y.R. is

10

vicariously liable for Ricardo's vandalism as the natural and probable consequence of the target crime (trespass).

However, the People now maintain that substantial evidence shows Y.R. committed vandalism under an aiding and abetting theory. "[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

To satisfy these elements, the People emphasize that Y.R. and Ricardo had previously gone to the clubhouse to hangout and intended to do so on December 17, 2011; Y.R. did not act surprised when she heard Ricardo break the door; she entered the clubhouse bathroom with Ricardo for a few hours after Ricardo broke the door; and she told Ricardo she was cold prior to Ricardo breaking the door. We are not persuaded.

The evidence that Y.R. knew that Ricardo was going to break the second bathroom door is tenuous. There is no evidence that Ricardo had damaged clubhouse property in the past. Nor is there any indication that Ricardo communicated to Y.R. his intent to break the doors on December 17, 2011 or that Y.R. otherwise was aware he was going to do so. Further, even though we accept the People's argument that the juvenile court did not believe Y.R.'s testimony implying that Y.R. knew of Ricardo's intent to break the doors, we do not find any evidence that Y.R. aided, promoted, instigated, or encouraged Ricardo to break the doors. The People contend Y.R.'s statement that she

11

was cold encouraged Ricardo to "find a way for them to get inside the clubhouse where it was warm." However, it is an unwarranted leap in logic to maintain that Y.R.'s statement that she was cold emboldened Ricardo to break the bathroom doors and it was Y.R.'s intent to encourage him to do so.

## DISPOSITION

The order is reversed.

HUFFMAN, Acting P. J.

WE CONCUR:

McDONALD, J.

O'ROURKE, J.