TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 95-909 |
| of | : | |
| | : | June 19, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a retirement system that operates under article 5 of the County Employees Retirement Law of 1937 (Gov. Code, §§ 31580-31607) transfer "excess earnings" to county advance reserves for the purpose of offsetting employer or employee contributions to the system?

CONCLUSION

A retirement system that operates under article 5 of County Employees Retirement Law of 1937 (Gov. Code, §§ 31580-31607) may transfer "excess earnings" to county advance reserves solely for the purpose of paying retirement benefits and not for the purpose of offsetting amounts owed in employer or employee contributions. However, based upon an actuarial evaluation of the assets and liabilities of the system due to the transfer of excess earnings to county advance reserves for payment of retirement benefits, the future rates of employer and employee contributions to the system may be adjusted.

ANALYSIS

Under the County Employees Retirement Law of 1937 (Gov. Code, §§ 31450-31895; hereinafter "Act"),[1] counties are authorized to establish independent retirement systems for their employees. (§ 31500; 70 Ops.Cal.Atty.Gen. 1, 2 (1987).) The management of a county system is vested in a board of retirement. (§ 31520.) The main function of such a board is to administer the employees retirement fund ("Fund"), which is "a trust fund created . . . solely for the benefit of the members and retired members of the system and their survivors and beneficiaries." (§ 31588.)

The Act provides retirement benefits for county employees (and employees of participating public districts within a county) which are funded by employer contributions, employee contributions, and investment earnings on monies deposited in the fund. (70 Ops.Cal.Atty.Gen., *supra*, p. 2.) Upon retirement, members of the system receive a regular retirement allowance,[2] and in most cases supplemental benefits, including various types of cost-of-living adjustments. (§§ 31681.8, 31870-31874.4, 31875-31879.2.)

The question we have been asked to resolve centers on certain financial provisions contained in article 5 (§§ 31580-31607) of the Act.[3] Section 31592 provides:

"Earnings of the retirement fund during any year in excess of the total interest credited to contributions and reserves during such year shall remain in the fund as a reserve against deficiencies in interest earnings in other years, losses on investments and other contingencies, except as provided in Sections 31529.5 and 31592.2."[4]

Section 31592.2 provides:

"In any county, earnings of the retirement fund during any year in excess of the total interest credited to contributions and reserves during such year shall remain in the fund as a reserve against deficiencies in interest earnings in other years, losses on investments, and other contingencies, except that, when such surplus exceeds 1 percent of the total assets of the retirement system, the board may transfer all, or any part, of such surplus in excess of 1 percent of the said total assets into county advance reserves for the sole purpose of payment of the cost of the benefits described in this chapter.

---

[1] All section references are to the Government Code unless otherwise indicated.

[2] The regular retirement allowance is funded one-half by employer contributions and one-half by employee contributions. It reflects both the employer provided pension (see §§ 31471-31473) and an equal employee annuity (see § 31457).

[3] Counties have the option of adopting an alternative set of financial provisions set forth in article 5.5 (§§ 31610-31619) of the Act. This opinion does not address those provisions. (See 70 Ops.Cal.Atty.Gen., *supra*, pp. 5-8.)

[4] Section 31529.5 pertains to contracting for outside legal services.

"Where the board of supervisors has provided for the payment of all, or a portion, of the premiums, dues, or other charges for health benefits, Medicare, or the payment of accrued sick leave at retirement to or for all, or a portion, of officers, employees, and retired employees and their dependents, from the county general fund or other sources, the board of retirement may authorize the payment of all, or a portion, of payments of the benefits described in this paragraph from the county advance reserves."

In 70 Ops.Cal.Atty.Gen. 1, *supra*, we explained the operation and significance of these statutory provisions:

"Counties which have not adopted the alternative financial provisions of article 5.5 are governed by the financial provisions found in article 5 of the 1937 Act. Under the latter provisions, an article 5 county is directed to obtain at least every three years an actuarial evaluation of its retirement system. `Upon the basis of the investigation, valuation, and recommendation of the actuary, the board [of retirement] shall . . . recommend to the board of supervisors such changes in the rates of interest, in the rates of contributions of members, and in county and district appropriations as are necessary' to fund the system. `With respect to the rates of interest to be credited to members and to the county or district, *the board may, in its sound discretion, recommend a rate which is higher or lower than the interest assumption rate established by the actuarial survey*.'" (§ 31453, as incorporated by reference in § 31581, emphasis added.)

"Employer and employee contributions to a retirement system such as the 1937 Act system are necessarily dependent upon and a function of accrued liabilities and assumed income. Accordingly, if the board decides to credit the employer and employee contribution accounts with less than the actuarially assumed interest rate (the assumed projected earnings of the system's investments), contributions will have to be increased; and vice versa. If the governing board fails to credit contributions with the full interest, then such interest (after certain allocations to reserves) will be available for the payment of benefits from the `advance reserves.'

"Sections 31592 and 31592.2 are the key provisions in this respect in article 5 counties. Section 31592 provides that interest not credited to contributions (and reserves) shall remain in the retirement fund as a reserve for contingencies, except as provided in sections 31529.5 and 31592.2. Section 31592.2 then permits the establishment of a county `advance reserves' from excess interest `for the sole purpose of payment of the cost of the benefits described in' the 1937 Act.

"Accordingly, it is seen that under the foregoing provisions of the 1937 Act an article 5 county could `divert' all or virtually all interest income from the retirement system accounts which generated that income, and then, after applying the requisite amount of income to insure the minimum 1% of assets for the reserve for contingencies, allocate *all* the remaining income to the advance reserve for the payment of benefits." (*Id*., at pp. 2-3; fn. omitted.)

Having reviewed the statutorily prescribed treatment of "excess earnings," we consider the question of whether a county retirement board may transfer excess earnings to county advance reserves for the purpose of offsetting amounts owed in employer or employee contributions to the system. We conclude that it may only transfer excess earnings to county advance reserves to pay for retirement benefits and not for the purpose of offsetting the amounts owed in employer or employee contributions. However, such transfer may in turn require adjustments in the level of employer and employee contribution rates necessary to fund the system in the future.

Various principles of statutory construction assist us in our inquiry. "When interpreting a statute our primary task is to determine the Legislature's intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "`A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." [Citation.]'" (*People* v. *Hull* (1991) 1 Cal.4th 266, 272.) "[S]tatutes relating to the same subject must, to the extent possible, be harmonized, both internally and with each other. [Citation.]" (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 747; see *In re Catalono* (1981) 29 Cal.3d 1, 10-11; *In re Robert B.* (1995) 39 Cal.App.4th 1816, 1822-1823; *San Francisco Police Officers' Assn.* v. *City and County of San Francisco* (1995) 37 Cal.App.4th 283, 295.)

Looking first to the language of section 31592.2, we find that when earnings are in excess of 1 percent of the total assets of the retirement system, "the board may transfer all, or any part, of such surplus in excess of 1 percent of the said total assets into county advance reserves for the sole purpose of payment of the cost of the benefits described in this chapter." The "benefits described in this chapter" are the benefits to which a system member is entitled at retirement. The cost of these benefits is incurred by the retirement system as an entity separate from the county and independently administered by the retirement board. (See *Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 798-799; *Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128, 132.)

Our construction of the terms of section 31592.2 is consistent with the other requirements of the Act. For example, section 31588.2 states:

"Notwithstanding any other provision of law, no funds in the retirement fund shall be expended for any purpose other than the expense of administration of the system, investments for the benefit of the system, and the provision of benefits to the members and retired members of the system and their survivors and beneficiaries."

Section 31588.2 precludes the use of any monies, not just excess earnings, contained in the Fund for purposes unrelated to the payment of administrative expenses, investment of the assets, or the payment of retirement benefits.

Section 31588 states:

"A trust fund account to be designated as `employees retirement fund' shall be opened upon the books of the retirement board, or treasurer and auditor if authorized by the board, of any county adopting this retirement system.

"The `employees retirement fund' shall be a trust fund created or continued and administered in accordance with this chapter, solely for the benefit of the members and retired members of the system and their survivors and beneficiaries.

"Nothing in this section shall be construed to prohibit the retirement board paying administrative costs, already authorized or to be authorized, or to prohibit the transfer of surplus funds to county advance reserves."

Pursuant to the terms of section 31588, the Fund is to be administered "solely for the benefit of the members . . . ." Such restriction does not preclude "paying administrative costs" or transferring "surplus funds to county advance reserves." As we have demonstrated, section 31592.2 authorizes the transfer of surplus funds to county advance reserves if (1) they exceed 1 percent of the total assets of the retirement system and (2) they are used solely to pay for retirement benefits.

Section 31874 provides in part:

"This article (commencing with Section 31870) may be made applicable in any county on the date specified in the ordinance, or if no such date is specified, on the first day of the month after the effective date of an ordinance adopted by the board of supervisors to this effect, provided that an actuarial survey of the retirement system has been made by the adopting county prior to the passage of said ordinance. No provision of this chapter shall prevent or be construed to prevent the use and expenditure of surplus described in Section 31592.2 to fund any part or all of any increases in allowances otherwise permitted after this article or Article 16.6 (commencing with Section 31875) or both this article and Article 16.6 or any of the provisions of this article or Article 16.6 have been made applicable."

Section 31874 refers to "[t]his article" (§§ 31870-31874.3) and "article 16.6" (§§ 31875-31879.2), both of which concern cost-of-living adjustments made to retirement allowances and other benefits. Surplus funds may be used to pay for increases in such allowances and benefits. Consistent with the requirements of section 31592.2, section 31874 allows for the use of surplus funds for retirement benefits under certain conditions.

Finally, we note that our construction of the terms of section 31592.2 is consistent with the Constitution. Section 17 of article XVI of the Constitution provides:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have

plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following:

"(a) The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries. The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system. A retirement board's duty to its participants and their beneficiaries shall take precedence over any other duty.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Restricting the use of excess earnings to the payment of retirement benefits allows Fund assets to be administered "for the exclusive purposes of providing benefits to participants in the . . . retirement system and their beneficiaries . . . ."

Of course, the transfer of excess earnings to county advance reserves for payment of retirement benefits may affect employer and employee contribution rates necessary to fund the system in the future. As previously mentioned, the sources of benefit payments are (1) employer contributions, (2) employee contributions, and (3) investment earnings. As retirement benefits are paid, the amount of future contributions (assets) needed may be correspondingly adjusted.

In this regard, section 31453 provides:

"An actuarial valuation shall be made within one year after the date on which any system established under this chapter becomes effective, and thereafter at intervals not to exceed three years. The valuation shall be conducted under the supervision of an actuary and shall cover the mortality, service, and compensation experience of the members and beneficiaries, and shall evaluate the assets and liabilities of the retirement fund. Upon the basis of the investigation, valuation, and recommendation of the actuary, the board shall, at least 45 days prior to the beginning of the succeeding fiscal year, recommend to the board of supervisors such changes in the rates of interest, in the rates of contributions of members, and in county and district appropriations as are necessary. With respect to the rates of interest to be credited to members and to the county or district, the board may, in its sound discretion, recommend a rate which is higher or lower than the interest assumption rate established by the actuarial survey.

No adjustment shall be included in the new rates for time prior to the effective date of the revision."

Section 31454 provides:

"The board of supervisors shall not later than 90 days after the beginning of the immediately succeeding fiscal year adjust the rates of interest, the rates of contributions of members, and county and district appropriations in accordance with the recommendations of the board, but shall not fix them in such amounts as to reduce the individual benefits provided in this chapter."

Hence, the assets and liabilities of the Fund must be regularly evaluated, and employer and employee contribution rates must be adjusted to reflect such evaluation. Although the excess earnings in question may not be used to *offset* the amount of contributions already owed by employers or employees, as long as individual benefits are not reduced, a board of supervisors may adjust future employer and employee rates of contributions based upon an evaluation of the assets and liabilities of the Fund.

We conclude that a retirement system that operates under article 5 of the Act may transfer excess earnings to county advance reserves solely for the purpose of paying retirement benefits and not for the purpose of offsetting amounts owed in employer or employee contributions. However, based upon an actuarial evaluation of the assets and liabilities of the system, including the transfer of excess earnings to county advance reserves for payment of retirement benefits, the future rates of employer and employee contributions to the system may be adjusted.

* * * * *