**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERRIS EDGERLY,
          *Plaintiff-Appellant,*

v.

CITY AND COUNTY OF SAN
FRANCISCO; DAVID GOFF; JOHN
CONEFREY; FREDERICK SCHIFF,
          *Defendants-Appellees.*

No. 05-15080

D.C. No.
CV-03-02169-WHA

ERRIS EDGERLY,
          *Plaintiff-Appellant,*

v.

CITY AND COUNTY OF SAN
FRANCISCO; DAVID GOFF; JOHN
CONEFREY; FREDERICK SCHIFF,
          *Defendants-Appellees.*

No. 05-15382

D.C. No.
CV-03-02169-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted November 13, 2006
Opinion Filed July 17, 2007
Opinion and Submission Vacated May 22, 2008
Resubmitted March 12, 2010
San Francisco, California

Filed March 19, 2010

Before: William C. Canby, Jr., John T. Noonan, and
Richard A. Paez, Circuit Judges.

4451

Opinion by Judge Paez

**COUNSEL**

Gregory M. Haynes, San Francisco, California, for plaintiff-appellant Erris Edgerly.

Dennis J. Herrera, City Attorney, Joanne Hoeper, Chief Trial Attorney, Sean F. Connolly, Deputy City Attorney, San Francisco City Attorney's Office, San Francisco, California, for defendants-appellees City and County of San Francisco, John Conefrey, and David Goff.

Jeremy Sugerman, Daniel J. O'Rielly, Gordon-Creed, Kelley, Holl & Sugerman, LLP, San Francisco, California, for defendant-appellee Frederick Schiff.

---

**OPINION**

PAEZ, Circuit Judge:

San Francisco Police Department Officers David Goff and John Conefrey ("Officers") arrested Erris Edgerly for trespassing within the gated area of the Martin Luther King/Marcus Garvey Housing Cooperative ("Cooperative"). The Officers transported Edgerly to the local police station, where they searched him for contraband. The search did not reveal any contraband and Sergeant Frederick Schiff, the police supervisor on duty at the time, authorized the Officers to issue Edgerly a citation for trespass and release him. Edgerly was not prosecuted for trespass or any other offense. Edgerly then filed this 42 U.S.C. § 1983 action against the Officers, Schiff, and the City and County of San Francisco ("City"), alleging that the Officers unlawfully arrested and searched him in violation of the Fourth Amendment, and that Schiff and the City were liable for the Officers' unconstitutional actions. He also asserted various state tort claims against the Officers, Schiff, and the City.

In ruling on the parties' motions for summary judgment,[1] the district court dismissed Edgerly's § 1983 claims against the City and all claims against Schiff, but found that there were genuine issues of material fact with regard to Edgerly's constitutional and state law claims against the Officers and state law claims against the City, and therefore allowed those claims to proceed to trial.

Following the presentation of all evidence, the district court granted the defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) and dismissed Edgerly's remaining claims. The court also awarded attorneys' fees to Schiff under 42 U.S.C. § 1988 and imposed sanctions against Edgerly and his attorney, Gregory Haynes, under Federal Rule of Civil Procedure 11(b). We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse in part, affirm in part, and remand for further proceedings.

On Edgerly's § 1983 arrest claim, we hold that the Officers had probable cause to arrest Edgerly for trespass in violation of California Penal Code section 602.8. Accordingly, we affirm the district court's grant of summary judgment to the City, and of judgment as a matter of law to the Officers, on the Fourth Amendment arrest claim. However, because a custodial arrest was not authorized under state law, we reverse the district court's grant of judgment as a matter of law to the Officers and the City on Edgerly's state law false arrest claim, and remand for further proceedings.

On Edgerly's search claims, we hold that, viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers subjected him to an unreasonable search in violation of the Fourth Amendment and California

---

[1]The Officers and the City filed joint motions for summary judgment and, later at trial, for judgment as a matter of law. Schiff filed separate motions. Edgerly filed a motion for partial summary judgment and requested partial judgment as a matter of law on his arrest claims.

Penal Code section 4030(f). We also hold that the Officers are not entitled to qualified immunity for the search as alleged. Consequently, we reverse and remand for further proceedings on Edgerly's § 1983 unlawful search claim against the Officers and state law search claims against the Officers and the City. We affirm the grant of summary judgment to the City on Edgerly's related *Monell*[2] search claim, however, because Edgerly has not provided sufficient evidence that the Officers were acting pursuant to a City policy of conducting strip searches without reasonable suspicion.

Finally, as to Edgerly's other claims, we reverse the Rule 50(a) ruling dismissing his additional state law claims against the Officers and the City. We affirm, however, (1) the grant of summary judgment to Schiff, (2) the award of attorneys' fees to Schiff under 42 U.S.C. § 1988, and (3) the imposition of sanctions against Edgerly and his counsel.

## I.   Background

In reviewing the district court's summary judgment ruling, we consider only the evidence submitted in connection with the parties' motions, which consisted primarily of their pretrial depositions. Conversely, in reviewing the district court's Rule 50(a) ruling, we consider only the evidence presented at trial. However, other than one discrepancy in Edgerly's testimony that is not relevant to our disposition,[3] there were no significant differences between the parties' depositions and trial testimony. Therefore, we do not expressly distinguish between the two in our description of the facts.

The material evidence regarding Edgerly's arrest is not in

---

[2]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[3]At his deposition, Edgerly testified that he told the Officers before the arrest that he was at the Cooperative "waiting for a resident." At trial, however, he did not testify that he told the Officers why he was at the Cooperative.

dispute. On August 29, 2000, while on daytime patrol, Officers Goff and Conefrey drove by the Cooperative and observed Edgerly standing inside the fence that surrounds the property, next to a playground area. "No trespassing" signs were posted at the Cooperative's gated entrances. The Officers continued on their patrol and returned about five minutes later to find Edgerly standing at the same location. According to the Officers, they knew that Edgerly did not live at the Cooperative and that he had previously been arrested for a drug offense at a nearby street corner.[4]

The Officers stopped their car, approached Edgerly, and asked him "what he was doing." According to the Officers, Edgerly responded that he was "just chilling," which meant "just hanging out for no reason."[5] Having "determin[ed] that he had no specific reason to be [at the Cooperative]," the Officers arrested Edgerly for trespassing in violation of California Penal Code section 602(*l*). The Officers testified that Edgerly was trespassing because he was loitering on the property and the Cooperative's management had requested that officers enforce the "no trespassing" signs.

After the arrest, the Officers conducted a pat-down search of Edgerly and transported him to the Park Police Station,

---

[4]The Officers also testified that the Cooperative was in a high-crime area known for drug dealing and that Edgerly was an "associate" of neighborhood gang members. Edgerly testified that he lived one block away from the Cooperative and regularly visited his friends who lived there. He also testified that he rang the doorbell to a friend's home shortly before his arrest and that he was waiting for her to return home when he was arrested.

[5]Edgerly's trial testimony was slightly different. He testified that the Officers asked him whether he lived at the Cooperative and that he said "no." We agree with the district court that this minor difference is not relevant to the probable cause analysis. Crediting either version of events, Edgerly did not provide the Officers with a specific explanation for his presence, but neither did he refuse to offer an explanation or suggest that he was on the premises for an unlawful purpose.

where they performed an additional search. There is conflicting evidence regarding the station search. Edgerly testified that Officer Goff asked him to remove his shoes and socks, pull his pants down to his ankles, and bend over and cough. He also testified that Goff looked inside his boxer shorts before telling him that he could get dressed. The Officers, however, testified that Goff conducted only a routine clothing search. In any event, the search did not reveal any contraband. Sergeant Schiff was the supervisor on duty at the police station at the time, but he was not aware of the arrest or search until after they were completed, at which time he authorized the Officers to cite and release Edgerly. Edgerly was never prosecuted for any offense.

Edgerly filed an action against the Officers, Schiff, and the City in the Superior Court of California, seeking damages under § 1983 for violations of his Fourth Amendment rights. Edgerly also alleged state law claims for negligence, negligent and intentional infliction of emotional distress, false arrest, and unlawful search. The City properly removed the case to federal court. After the parties completed discovery, the district court granted summary judgment to the City on Edgerly's § 1983 *Monell* claims and to Schiff on all claims against him. The court found, however, that there were genuine issues of material fact with regard to Edgerly's § 1983 and state law claims against the Officers and state law claims against the City, and therefore denied summary judgment on those claims.

At trial, at the close of all the evidence, the district court granted the Officers and City's motion for judgment as a matter of law "for the reasons stated on the record and memorandum submitted by [the Officers and City]."[6] The court ruled

---

[6]Although Edgerly did not file a separate Rule 50(a) motion, he requested that the court rule as a matter of law that the Officers lacked probable cause to arrest him, in his "Response to Defendants' Request for Curative Instructions and Plaintiff's Request for order of No probable cause for 602(L) trespass arrest."

that, as a matter of law, the Officers had probable cause to arrest Edgerly, if not under section 602(*l*), then under another state trespassing or loitering statute. As the court explained at the Rule 50 hearing:

> On this record and these circumstances no jury could find otherwise than these officers had probable cause to believe a crime of some sort had been committed. That's true even if it wasn't 602(*l*). It didn't have to be 602(*l*). In addition, I want to say that counsel should have brought to my attention California Penal Code 602.8. . . . But I want to say that I'm not limiting my analysis to 602.8. I am adopting each and every other provision that the City Attorney's Office has suggested . . . .[7]

The court also held that the Officers' search of Edgerly at the police station was not a strip search and was reasonable under the Fourth Amendment. In the alternative, the court held that, under federal and state law, the Officers were entitled to immunity from all of Edgerly's claims.

After entry of judgment, the district court granted Schiff's motion for attorneys' fees, because Edgerly failed to dismiss Schiff after discovery revealed that the claims against him lacked merit. The court also granted Schiff's motion for sanctions against Edgerly and his attorney, finding that they filed two frivolous motions for reconsideration of the court's summary judgment ruling.

---

[7]As we discuss below, the Officers and the City suggested that probable cause also existed to arrest Edgerly under California Penal Code sections 602.5 and 647(h).

## II. Discussion

### A. Officers Goff and Conefrey

We review de novo the district court's order granting the Officers' and the City's motion for judgment as a matter of law under Rule 50(a). *See Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002). "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Id.*

#### 1. Section 1983 Unlawful Arrest Claim

**[1]** Edgerly argues that the Officers arrested him without probable cause, in violation of the Fourth Amendment. To determine whether the Officers had probable cause at the time of the arrest, we consider "whether at that moment the facts and circumstances within [the Officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Although conclusive evidence of guilt is not necessary to establish probable cause, "mere suspicion, common rumor, or even strong reason to suspect are not enough." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (internal quotation marks, citation, and alteration omitted). Generally, officers need not have probable cause for every element of the offense, but they must have probable cause for specific intent when it is a required element. *Id.* at 1072-73.

**[2]** Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). Probable cause, however, must still exist under some specific criminal statute. *See id.* at 155-56; *see also Alford v. Haner*, 446 F.3d 935, 937 (9th Cir. 2006). It is therefore not enough that probable cause

existed to arrest Edgerly for some metaphysical criminal offense; the Officers must ultimately point to a particular statutory offense.

Although the Officers lacked probable cause to arrest Edgerly for violating California Penal Code section 602(*l*)—now section 602(m)[8]—the statute under which they cited him, we ultimately conclude that probable cause existed to arrest Edgerly under another trespass provision, California Penal Code section 602.8(a). We therefore affirm the district court's grant of judgment as a matter of law to the Officers on Edgerly's § 1983 unlawful arrest claim.

**[3]** The Officers cited Edgerly for violating California Penal Code section 602(*l*), now section 602(m). Under this section, a person commits a trespass if he or she "willfully . . . [e]nter[s] and occup[ies] real property or structures of any kind without the consent of the owner." Long before Edgerly's arrest, however, the California Supreme Court had clearly held that section 602(*l*) "requires occupation of the property, a 'nontransient, continuous type of possession.' " *In re Catalano,* 623 P.2d 228, 234 n.8 (Cal. 1981) (quoting *People v. Wilkinson*, 56 Cal. Rptr. 261, 264 (Cal. App. Dep't Super. Ct. 1967)). As *Wilkinson* explained, section 602(*l*) requires the specific "inten[t] to remain permanently, or until ousted." 56 Cal. Rptr. at 262; *see also* Cal. Jury Instr., Crim., No. 16.340 (6th ed. 1996) (requiring, for a conviction under section 602(*l*), proof that the defendant "entered and occupied the property with the specific intent to dispossess those lawfully entitled to possession").

**[4]** Here, the Officers knew only that Edgerly was not a resident of the Cooperative and that he had been on the prop-

---

[8]In 2003, the California legislature amended Penal Code section 602, resulting in a renumbering of subdivision 602(*l*) to subdivision 602(m). 2003 Cal. Legis. Serv. ch. 805 (S.B. No. 993) (West). There were no substantive changes to this provision.

erty for a matter of minutes. On the basis of these facts, a reasonable officer would not have believed that Edgerly had violated or was about to violate section 602(*l*).

Nor did probable cause exist to arrest Edgerly for several of the other criminal offenses suggested by the Officers and City to the district court. Loitering, under California Penal Code section 647(h), also has a specific intent requirement, for which the Officers had no probable cause.[9] Specifically, that section requires that the alleged loiterer "delay or linger" on the property "for the purpose of committing a crime as opportunity may be discovered."[10] *Id.*; *see also In re Joshua M.*, 110 Cal. Rptr. 2d 662, 664-65 (Cal. Ct. App. 2001) (noting that the California courts first added this "specific intent element" to the state's loitering statute, and that "[t]he Legislature included this intent element when it redrafted [the loitering statute] as present section 647, subdivision (h)"). And trespass under the 2000 version of California Penal Code section 602.5 in effect at the time of Edgerly's arrest, which prohibited "enter[ing] or remain[ing] in any noncommercial dwelling house, apartment, or other such place,"[11] applied by its terms only to "structures of the most private character, i.e., places of habitation." *In re D.C.L.*, 147 Cal. Rptr. 54, 55 (Cal.

_____

[9]California Penal Code section 647(h) provides, in full: "[Everyone who] loiters, prowls, or wanders upon the private property of another, at any time, without visible or lawful business with the owner or occupant [is guilty of disorderly conduct, a misdemeanor]. As used in this subdivision, 'loiter' means to delay or linger without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered."

[10]Although we recognize that the probable cause and qualified immunity standards are objective, *see Lopez*, 482 F.3d at 1072, we note that the Officers and City do not argue, and the Officers did not testify, that the Officers had probable cause to believe that Edgerly was on the Cooperative property for the purpose of committing a crime.

[11]Effective January 1, 2001, California amended section 602.5 to replace "other such place" with "other residential place." 2000 Cal. Legis. Serv. ch. 563 (S.B. No. 1486) (West).

Ct. App. 1978) (holding that unauthorized entry of a shed adjacent to a house does not violate the section).[12] A reasonable officer would not have believed that Edgerly, who was standing in the Cooperative's playground area, had entered or was about to enter a dwelling unit in the Cooperative in violation of section 602.5.

[5] Probable cause did, however, exist to believe that Edgerly was acting in violation of California Penal Code section 602.8(a). Section 602.8(a) prohibits unauthorized entry of "lands under cultivation or enclosed by fence . . . [or] uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to a mile."[13] Because

---

[12]As *In re D.C.L.* also noted, to construe the section otherwise "would be inconsistent with the legislative intent expressed in [section 602(*l*)], in that a penalty could be imposed for an unauthorized entry of any noncommercial structure even though no substantial occupation occurred." *Id.* (footnote omitted).

[13]The reference to "lands under cultivation," may suggest that the statute was intended to apply only to agricultural or rural land. *See Quarterman v. Kefauver*, 64 Cal. Rptr. 2d 741, 745-46 (Cal. Ct. App. 1997) (citing to section 602.8(a), among other statutes, in noting that "when the Legislature refers to land as . . . under cultivation . . . the ordinary import of the description usually is to agricultural land . . . , or at least rural land as opposed to urban backyards"). By its plain terms, however, section 602.8(a) applies not only to "lands under cultivation," but also to "lands where signs forbidding trespass are displayed" at requisite intervals. Moreover, in addressing whether owners of apartment complexes, condominium projects, and mobile home parks may bar personal distribution of political campaign materials on their property, the California Attorney General specifically noted section 602.8 as authority for excluding political candidates from such property. *See* 81 Ops. Cal. Atty. Gen. 71. This suggests, at least in the Attorney General's view, that the statute is applicable to non-rural land. Finally, the only two state cases we have found applying section 602.8(a) did so in non-rural contexts, though both are unpublished and nonprecedential. *See People v. McGill*, No. A095525, 2002 WL 1978970, *2 (Cal. Ct. App. Aug. 28, 2002) (holding that a detention for trespass into a fenced-in dumpster area behind a market was lawful because the detaining officer had probable cause to believe that a trespass occurred in violation of section 602.8(a)); *Haroonian v. Upton*,

the Cooperative where the Officers encountered Edgerly was fenced in and had "No trespassing" signs posted at its entrances, the officers had probable cause to believe that Edgerly was in violation of section 602.8(a).

**[6]** We recognize that under state law, an arrest for violation of section 602.8 was nonetheless unauthorized. A first offense under section 602.8(a) is punishable only as an infraction and, under California law, "[i]n all cases . . . in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present . . . satisfactory [proof of identity] and to sign a written promise to appear." Cal. Penal Code § 853.5(a). "Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody." *Id.* Here, because the Officers did not testify that Edgerly did any of these three things, or that they had reason to believe that he previously violated section 602.8(a), custodial arrest was improper under state law even though probable cause existed to believe that Edgerly was violating the law. However, "state restrictions [on arrest] do not alter the Fourth Amendment's protections," and under federal law, "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution."**[14]** *Virginia*

No. B150987, 2002 WL 1155585, *7-8 (Cal. Ct. App. May 31, 2002) (reversing the grant of summary judgment on a trespass claim for consideration of whether defendant process server may have had privilege to enter plaintiff's suburban home under 602.8(c)(3)). Although we are not bound by either the unpublished state cases or the Attorney General's opinion, we find them persuasive, and we decline to read a narrowing interpretation into the state statute when the state has not only not done so, but has affirmatively applied the statute to non-rural lands.

**[14]**In our previous opinion, we held that Edgerly's arrest was unconstitutional and that the Officers were not entitled to qualified immunity in light of the state law restriction on arrests for first-time offenses of this kind. *See Edgerly v. City and County of San Francisco*, 495 F.3d 645, 653-55 (9th Cir. 2007), *rehearing granted, opinion withdrawn by* 527 F.3d 841

*v. Moore*, 128 S. Ct. 1598, 1607 (2008) (holding that police officers did not violate the Fourth Amendment by arresting a motorist whom they had probable cause to believe had violated a state driving law even though under Virginia law the officers should have issued a summons for the misdemeanor rather than made an arrest). We therefore hold that Edgerly's arrest was constitutional, even though it was impermissible under state law, and affirm the district court's grant of judgment as a matter of law to the Officers on Edgerly's § 1983 Fourth Amendment arrest claim.

### 2.    Section 1983 Unlawful Search Claim

Edgerly also challenges the search that the Officers conducted following his arrest as more invasive than was reasonable under the circumstances. We conclude that the district court erroneously entered judgment as a matter of law for the Officers on Edgerly's § 1983 unlawful search claim. Viewing the evidence at trial in the light most favorable to Edgerly, a reasonable jury could find that the Officers' search of Edgerly

(9th Cir. 2008). In so holding, we relied on Ninth Circuit law holding that "federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest" and that state law restrictions on arrest for minor crimes were thus applicable to Fourth Amendment analyses. *Id.* at 655 (citing *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950 (9th Cir. 2003)); *see also Reed v. Hoy*, 909 F.2d 324, 330 n.5 (9th Cir. 1989) (indicating that state law is also relevant in analyzing the reasonableness of a search under the Fourth Amendment). We withdrew our opinion after the Supreme Court decided *Virginia v. Moore*, in which it held that such state arrest restrictions are irrelevant to our Fourth Amendment inquiry. 128 S. Ct. at 1607. We are now bound by *Moore*, and to the extent that *Bingham* and *Reed* are inconsistent with *Moore*, they are effectively overruled. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled").

at the police station was unreasonable, in violation of the Fourth Amendment. Also, because no reasonable officer could have believed, in light of clearly established law, that the search as described by Edgerly was constitutional, the Officers are not entitled to qualified immunity for the search. Because the evidence from trial permits more than one reasonable conclusion as to the constitutionality of the search, we remand for further proceedings.

### a.    Reasonableness of the Search

**[7]** To determine whether a search is reasonable under the Fourth Amendment, we balance "the need for the particular search against the invasion of personal rights that the search entails."[15] *Way v. County of Ventura*, 445 F.3d 1157, 1160 (9th Cir. 2006) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Applying this balancing test, we first held *in Giles v. Ackerman* that "arrestees charged with minor offenses may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband." *Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir. 1984), *overruled by Bull v. City and County of San Francisco*, No. 05-17080, slip op. 2238, 2268 (9th Cir. Feb. 9, 2010) (en banc). We have repeatedly applied this rule in cases following *Giles*. *E.g.*, *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871-72 (9th Cir. 1993); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991). We recently carved out an exception to this rule in *Bull v. City and County of San Francisco*, in which we overruled *Giles* and held that such an arrestee could be strip searched without individualized suspicion if the arrestee would be introduced into the general jail population. *Bull*, slip op. at 2268. In those circumstances, the institutional need to prevent arrestees from bringing contraband into the jail justified the "the invasion of personal rights

---

[15]As with arrests, state law restrictions on searches do not change Fourth Amendment protections. *See Moore*, 128 S. Ct. at 1607 ("[S]tate restrictions do not alter the Fourth Amendment's protections.").

that the search entails." *Bull*, slip op. at 2259 (citing *Bell*, 441 U.S. at 559). *Bull*, however, left undisturbed our line of precedent requiring reasonable suspicion to strip search arrestees charged with minor offenses who are not classified for housing in the general jail population. *Bull*, slip op. at 2268-69. This precedent controls here because Edgerly was never placed in the general jail population, but was merely cited and released at the station. We therefore first consider Edgerly's contention that he was strip searched; if he was, we must then consider whether the Officers had a reasonable suspicion that he was carrying or concealing contraband.

**[8]** In *Giles*, we held that visually inspecting an arrestee's naked body, even without a "visual examination of body cavities," constitutes a strip search.[16] *Giles*, 746 F.2d at 615, 616.

---

[16]The Supreme Court also recently held that a search very similar to the search that Edgerly alleges was conducted on him constitutes a strip search. In *Safford Unified School District No. 1 v. Redding*, 129 S. Ct. 2633, 2641 (2009), school officials had directed a student to strip down to her underwear and then to "pull out" her bra and the elastic band on her underpants. The Supreme Court noted that it would be "fair" to call this a "strip search." *Id.* Notably, the Supreme Court expressly declined to ascribe any significance to whether the officials "s[aw] anything," explaining that it "would not define strip search and its Fourth Amendment consequences in a way that would guarantee litigation about who was looking and how much was seen." *Id.* Rather, the Court held that "pulling her underwear away from her body in the presence of the two officials who were able to see her necessarily exposed her breasts and pelvic area to some degree." *Id.* This exposure amounted to a "degree of intrusion" that, in that context, required greater justification than a search of outer clothing and belongings. *Id.* at 2642.

Similarly, we have held in the border search context that requiring an arrestee to expose only his or her undergarments "tend[s] toward [a] strip search in that if conducted in public it can be said to result in embarrassment to one of reasonable sensibilities." *United States v. Palmer*, 575 F.2d 721, 723 (9th Cir. 1978). We further held that, although it is "hardly feasible to enunciate a clear and simple standard for each possible degree of intrusiveness," such a search requires "suspicion . . . founded on facts specifically relating to the person to be searched, and [that] the search [be] no more intrusive than necessary to obtain the truth respecting the suspicious circumstances." *Id.*

Although *Bull* overruled *Giles*'s holding that officials need individualized suspicion to strip search minor-offense arrestees who would be placed in the general jail population, it did not disturb its conclusion that a mere visual inspection of an arrestee's naked body constitutes a strip search. *See Bull*, slip op. at 2262-68. Viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers strip searched him. According to Edgerly's trial testimony, Officer Goff required him to arrange his clothing so as to permit a visual inspection of his undergarments, by asking him to pull his pants down to his ankles. Edgerly testified that Goff then placed his finger within Edgerly's boxers and "kind of just looked around." This would permit a reasonable inference that Goff visually inspected Edgerly's buttocks or genitalia, which would amount to a strip search under *Giles*, 746 F.2d at 616, 618. Therefore, if the jury credits Edgerly's testimony, it could reasonably conclude that the Officers' search was a strip search that required reasonable suspicion that Edgerly was concealing contraband.

The Officers, however, did not testify that they had reasonable suspicion for the search. Rather, they testified that they arrested Edgerly only for trespass, a minor offense not involving contraband, weapons, or violence. Also, Officer Coneferey testified that Edgerly was not required to lower his pants at the police station because there was no reason to believe that he was concealing a weapon or contraband.

**[9]** Accordingly, a dispute of fact exists, and a reasonable jury could find that the Officers strip searched Edgerly, and did so without the requisite reasonable suspicion, in violation of Edgerly's Fourth Amendment rights.

b.    Qualified Immunity for the Search

**[10]** Even assuming the Officers' conduct violated Edgerly's constitutional rights, the grant of judgment as a matter of law would be appropriate if the Officers are entitled to quali-

fied immunity for the strip search Edgerly alleges they performed. We therefore must consider whether the law was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Way*, 445 F.3d at 1159.

**[11]** We conclude that the Officers are not entitled to qualified immunity for their alleged strip search of Edgerly by visually inspecting his genitalia or buttocks. As we explained above, without reasonable individualized suspicion, a strip search like that alleged here is unconstitutional. *See Fuller*, 950 F.2d at 1446. The law on this point was clearly established at the time of this search: we have previously held that it was clearly established in 1989 "that it is unlawful to strip search an arrestee brought to a jail facility on charges of committing a minor offense, unless the officer directing the search possesses 'a reasonable suspicion that the individual arrestee is carrying or concealing contraband.' " *Act Up!/Portland*, 988 F.2d at 871-72 (quoting *Giles*, 746 F.2d at 617) (footnote omitted).[17] In light of this clearly established law, no reasonable officer could have believed that the police station search, as described by Edgerly at trial, was lawful. *See Way*, 445 F.3d at 1159; *see also Saucier*, 533 U.S. at 202. We therefore reverse the grant of judgment as a matter of law, and remand Edgerly's § 1983 unlawful search claim for further proceedings.

### 3.   State Law Claims

#### a.   False Arrest Claim

**[12]** In addition to his federal unlawful arrest claim,

---

[17]Because *Bull* did not disturb our cases requiring individualized suspicion for strip searches of arrestees not classified for housing in the general jail population, *Bull*'s overruling of *Giles* in no way affects our conclusion that the law was clearly established here. *Bull*, slip op. at 2268-69.

Edgerly maintains a state law false arrest claim. For the reasons explained above, the only offense that the Officers had probable cause to believe Edgerly was committing when they encountered him was trespass, in violation of California Penal Code section 602.8. While the existence of probable cause renders the arrest reasonable under the Fourth Amendment, and thus constitutional, more is needed to authorize Edgerly's custodial arrest under state law. *Cf. People v. McKay*, 41 P.3d 59, 71 (Cal. 2002) (holding that state arrest procedures do not limit the constitutionality of arrests under the Fourth Amendment, but emphasizing that that holding "in no way countenance[s] violations of state arrest procedure," as "[v]iolation of those rights exposes the peace officers and their departments to civil actions seeking injunctive or other relief"). As noted above, a first offense under section 602.8(a) is punishable only as an infraction and, under California law, "[i]n all cases . . . in which a person is arrested for an infraction," custodial arrest is authorized "[o]nly if the arrestee refuses to sign a written promise [to appear], has no satisfactory identification, or refuses to provide a thumbprint or fingerprint." Cal. Penal Code § 853.5(a).

**[13]** Here, because the Officers did not testify that Edgerly met any of these three requirements, or that they had reason to believe that he previously violated section 602.8(a), the custodial arrest was not authorized by state law. Further, because this limitation on arrests for mere infractions was clearly established by statutory law, the officers did not have "reasonable cause to believe the arrest was lawful" under state law, and they are not entitled to immunity from civil liability. *See* Cal. Penal Code § 847(b)(1) (providing that officers are entitled to immunity from false arrest claims if "the arrest was lawful" or the officers had "reasonable cause to believe the arrest was lawful"); *see also O'Toole v. Superior Court*, 44 Cal. Rptr. 3d 531, 548-49 (Cal. Ct. App. 2006) (noting that police officers are not granted governmental immunity for false arrest or false imprisonment under California law, but that California Penal Code section 847 protects them from

civil liability under certain circumstances). We therefore reverse and remand for further proceedings on this state law claim.

### b.    Unlawful Search Claim

**[14]** Although the legal basis for Edgerly's state law unlawful search claim is not entirely clear from his complaint or the district court's orders, it appears to be California Penal Code section 4030(p), which provides a private right of action for persons unlawfully strip searched in violation of the section. Section 4030(f) states that "[n]o person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances or violence . . . shall be subjected to a strip search . . . unless a peace officer has determined there is reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband." It further requires "prior written authorization of the supervising officer on duty" before such a strip search may occur. *Id.* The term "strip search" is defined in section 4030(c) as "a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person."

**[15]** Viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers strip searched him in violation of section 4030(f). We therefore reverse and remand for the district court to clarify the legal basis of this claim and to proceed accordingly.

### c.    Negligence, Negligent and Intentional Infliction of Emotional Distress

**[16]** Edgerly's claims for negligence and negligent and intentional infliction of emotional distress, however, raise substantial legal and factual questions beyond the lawfulness

of Edgerly's arrest and search, such as whether Edgerly suffered severe emotional distress and what duties the Officers owed to Edgerly. Because the district court mistakenly concluded that Edgerly's arrest and search were lawful, it did not reach these questions. We therefore remand these claims so that the district court can address the necessary questions in the first instance.

## B. The City

### 1. Section 1983 *Monell* Claims

We review de novo the district court's order granting summary judgment to the City for Edgerly's § 1983 claims against it. *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Viewing the facts in the light most favorable to the nonmoving party, "we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* We conclude that the district court properly granted summary judgment to the City on both of Edgerly's § 1983 *Monell* claims.

**[17]** Local government entities "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [entity's] officers." *Monell*, 436 U.S. at 690. However, liability attaches only where the entity's policies evince a "deliberate indifference" to the constitutional right and are the "moving force behind the constitutional violation." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (internal quotation marks and citation omitted).

**[18]** Because we conclude that the Officers did not inflict a constitutional injury on Edgerly by arresting him, Edgerly cannot maintain a § 1983 claim against the City on the basis of his arrest, regardless of whether the City had a policy of making arrests under section 602(*l*) where probable cause was

lacking. We therefore affirm the grant of summary judgment to the City on Edgerly's § 1983 *Monell* claim for unlawful arrest.

**[19]** We also affirm the grant of summary judgment on Edgerly's *Monell* claim premised on the Officers' allegedly unconstitutional search. Some evidence in the record does support Edgerly's contention that the Officers were not trained to request authorization from a supervisor before requiring an arrestee to reveal his underclothing, including Schiff's deposition testimony that he followed "department policy" in requiring officers to request authorization only for full body cavity searches. This alleged insufficiency in training, however, relates only to a possible state law violation under California Penal Code section 4030, which requires prior supervisor authorization for searches in which an arrestee is required to "remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing." Cal. Penal Code § 4030(c), (f). No such supervisor authorization is required by the Fourth Amendment, and thus this alleged failure to train is not the moving force behind a constitutional violation, as required for *Monell* liability. Because Edgerly has not presented evidence of a City policy of conducting strip searches, as defined by Fourth Amendment standards, without reasonable suspicion, judgment was properly granted to the City.

### 2.    State Law Claims

**[20]** We conclude, however, that the district court erred by granting judgment as a matter of law for the City on Edgerly's state law tort claims. First, Edgerly is correct that the City is vicariously liable for the Officers' actions under California law, which "has rejected the *Monell* rule and imposes liability on [cities] under the doctrine of respondeat superior for acts of [city] employees." *See Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (citing Cal. Gov't Code § 815.2). The City is therefore liable to the same extent

as the Officers for Edgerly's state law claims against them, and Edgerly may recover from the City any damages awarded on remand. *See id.*

**[21]** Second, Edgerly's claim that the City is directly liable for his injuries because it negligently trained and supervised the Officers raises legal and factual questions that the district court has not yet addressed, such as whether the City owed Edgerly a relevant duty of care. We therefore remand this claim for the district court to address the necessary questions in the first instance.

## C. Sergeant Schiff

We affirm the district court's grant of summary judgment to Sergeant Schiff as to all claims against him.

We have found supervisorial liability under § 1983 where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001)). Thus, supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

**[22]** Taking the facts in the light most favorable to Edgerly, Sergeant Schiff was a police supervisor who was responsible for the day-to-day operations at the station when he was on duty, and who provided only informal training to officers—as Schiff testified at his deposition, when officers asked him questions, he would try to answer them. These facts do not establish supervisorial liability for Schiff. No rea-

sonable trier of fact could find that Schiff had any personal involvement in the incident because he was not aware of the arrest or search until after they were completed, when he authorized the Officers to cite and release Edgerly. Nor could a reasonable trier of fact find that a sufficient causal connection existed between Schiff and the Officers' potentially unconstitutional search of Edgerly. Schiff was not responsible for station policy; he was required to enforce the rules and regulations set forth by his supervising captain and other higher-ranking officers. *Cf. Redman v. County of San Diego*, 942 F.2d 1435, 1446-48 (9th Cir. 1991) (en banc) (holding, where petitioner alleged that he was sexually assaulted in prison due to a deficient inmate assignment policy, that a reasonable jury could find supervisorial liability based on evidence that the defendant sheriff was responsible for the "ultimate direction of operations at the [prison]"). Nor do the facts suggest that Schiff provided any training to Officers Goff or Conefrey in particular, or that he was responsible for providing formal training to any officers. *See Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that, to establish supervisorial liability for failure to train, a plaintiff must show that the failure "amounted to deliberate indifference").

**[23]** Accordingly, the district court properly dismissed Edgerly's § 1983 claims against Schiff. For similar reasons, the court properly dismissed Edgerly's state law claims against Schiff. Each of these state law claims required proof of causation and, as discussed, the facts do not establish a sufficient causal connection between Schiff and the Officers' actions. We therefore affirm the district court's grant of summary judgment to Schiff.

## D. Attorneys' Fees

We review an award of attorneys' fees pursuant to 42 U.S.C. § 1988 for abuse of discretion. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160 (9th Cir. 2000). A district court may award

attorneys' fees to a prevailing defendant "only where the action brought is found to be unreasonable, frivolous, meritless or vexatious."[18] *Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

Prior to Schiff's deposition on May 4, 2004, his attorney sent three letters to Edgerly's attorney requesting that he dismiss Schiff because the Officers' depositions established that Schiff was not liable for the arrest or search. Edgerly's attorney declined to do so. After the district court ordered summary judgment on October 14, 2004, Schiff's attorney filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988.

The district court granted Schiff's motion in part, awarding him reasonable attorneys' fees starting from May 11, 2004, when the parties completed discovery. The court found that it was reasonable for Edgerly not to dismiss Schiff before completing discovery, since it was possible that Schiff's deposition would reveal that he had a more significant role in training or supervising the Officers than the Officers' depositions had disclosed. The court found, however, that it was unreasonable for Edgerly not to dismiss Schiff after his deposition confirmed that there was no basis for supervisorial liability.

**[24]** We conclude that the district court did not abuse its discretion in awarding reasonable post-discovery attorneys' fees to Schiff.[19]

---

[18]Edgerly does not challenge the amount of the fee award.

[19]Edgerly also argues that the district court abused its discretion because it decided the motion for attorneys' fees without allowing oral argument. Local Rule 7-1(b) for the Northern District of California, however, provides that a district court may decide motions without oral argument, and Edgerly does not explain why oral argument was necessary for the court to rule properly on Schiff's motion.

*E.   Sanctions*

We also review a district court's imposition of sanctions for abuse of discretion. *Patelco Credit Union v. Sahni*, 262 F.3d 897, 912-13 (9th Cir. 2001). "A district court abuses its discretion in imposing sanctions when it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 913. A motion for reconsideration is sanctionable if it is frivolous, but not if it raises new issues. *See Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992).

Here, the district court awarded sanctions against Edgerly and his attorney, Gregory Haynes, under Federal Rule of Civil Procedure 11(b) on the basis of its finding that they filed two frivolous motions for reconsideration.[20] Thus, the court awarded sanctions in the amount of attorneys' fees that Schiff incurred in responding to the motions.

[25] We conclude that the district court did not abuse its discretion in imposing these sanctions. The court did not commit any legal error and its finding that Edgerly and Haynes' two motions for reconsideration did not raise any new issues was not clearly erroneous.[21]

## III.   Conclusion

[26] In sum, we conclude that the Officers did not violate Edgerly's Fourth Amendment rights by arresting him because probable cause existed to believe that he was present within the Cooperative in violation of California Penal Code section

---

[20]The district court also found in the alternative that the award of sanctions was justified under 28 U.S.C. § 1987. Because we affirm the award of sanctions under Federal Rule of Civil Procedure 11(b), we do not address this alternate basis for the sanctions.

[21]For the reasons discussed *supra* in note 18, the district court did not abuse its discretion in granting the motion without allowing oral argument.

602.8. We therefore affirm the district court's entry of judgment as a matter of law for the Officers on Edgerly's § 1983 unlawful arrest claim. For the same reason, we affirm the grant of summary judgment to the City on the § 1983 *Monell* arrest claim. However, because a custodial arrest was not authorized under state law, we reverse the district court's grant of judgment as a matter of law to the Officers and the City on Edgerly's state law false arrest claim, and remand for further proceedings.

We further hold that, viewing the evidence in the light most favorable to Edgerly, a reasonable jury could find that the Officers unlawfully strip searched him in violation of the Fourth Amendment and California Penal Code section 4030(f), and that the Officers are not entitled to qualified immunity for the search. We therefore reverse and remand for further proceedings with respect to Edgerly's § 1983 unlawful search claim against the Officers and state law unlawful search claims against the Officers and the City. We affirm the grant of summary judgment to the City on Edgerly's related *Monell* claim, however, because Edgerly has not provided sufficient evidence that the Officers were acting pursuant to a City policy of conducting strip searches without reasonable suspicion.

We reverse and remand for the district court to address in the first instance Edgerly's claims of state law negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against the Officers and the City, and his negligent training and supervision claim against the City.

Finally, we affirm the district court's grant of summary judgment and award of attorneys' fees to Schiff and the imposition of sanctions against Edgerly and his attorney, Gregory Haynes.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings consistent with this opinion.

In Appeal No. 05-15382, the parties shall bear their own costs of appeal.

In Appeal No. 05-15080, the Appellees shall recover their costs of appeal.