**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   16-50495 |
| Plaintiff-Appellee, | D.C. No. 3:13-cr-04510-JAH-10 |
| v. | |
| TONY BROWN, AKA Lil' Play Doh, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   17-50103 |
| Plaintiff-Appellee, | D.C. No. 3:13-cr-04510-JAH-3 |
| v. | |
| ROBERT BANKS III, AKA Pimpsy, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted November 5, 2019
Pasadena, California

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  SCHROEDER and FRIEDLAND, Circuit Judges, and ROSENTHAL, [**] Chief District Judge.

Defendants-Appellants Tony Brown and Robert Banks III were associated with the Skanless street gang in San Diego, whose members engaged in pimping and related unlawful activities.[1]  In 2014, the government indicted them as part of a large-scale RICO prosecution alleging that Skanless and another gang, Black Mob, together constituted a RICO "association-in-fact" enterprise, Black Mob Skanless, that engaged in sex trafficking and related racketeering acts.  Brown and Banks went to trial on the charges.  Brown and Banks now appeal their convictions after the jury trial.

While these defendants raise many issues, the most significant for the purposes of our decision are the sufficiency of the evidence supporting the RICO enterprise conviction, and whether various videos, depicting Brown, Banks, and other gang members engaged in braggadocio behavior concerning their pimping achievements and gang affiliations, were unduly prejudicial.  We hold that the

---

[**]    The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

[1]Although the defendants contest whether Skanless in fact constituted a street gang and whether they were members, the jury was entitled to infer that Skanless functioned like a street gang and that the defendants were members of or otherwise affiliated with it.

evidence was sufficient, and that the district court did not abuse its discretion in admitting the videos into evidence; the limited number of videos to which the defendants objected were probative in establishing their involvement, with others, in promoting and entrenching pimping and prostitution activity and were not unduly prejudicial given the unsavory nature of the entire case.

The defendants argue that the evidence was insufficient to establish that Black Mob Skanless constituted a single RICO enterprise and that their acts were undertaken for the benefit of the enterprise. The record contains a great deal of evidence that connects members of Black Mob with members of Skanless. It also contains evidence describing and illustrating the defendants' conduct as gang members, including advertising their relationships with other Black Mob Skanless members, promoting and entrenching the enterprise's hold over pimping activity within its territory, and attending events with other Black Mob Skanless members celebrating their pimping prowess. From this evidence, the jury could rationally infer the existence of a pimping enterprise and activities undertaken by Brown and Banks, with others, in support of that enterprise for their mutual benefit.

The district court admitted videos the government offered that depicted various subjects, including rap music produced by the defendants and others, gang members' pimping celebrations, and individuals bragging about their pimping

3

successes.  Brown and Banks were shown in many of the videos.  The videos they challenge on appeal illustrated antisocial behavior associated with pimping.  The defendants contend that the district court abused its discretion in admitting the videos because they were unduly prejudicial in featuring acts and words demeaning to women, offensive language, and improper character evidence.

The videos were probative in that they provided evidence that Black Mob Skanless was an enterprise organized for the purpose of entrenching members' pimping activity in North Park, San Diego.  The videos conveyed that Black Mob Skanless controlled North Park, highlighted the territorial markers, and conveyed warnings that rival gangs should keep their activities "over there" and not bring them into North Park.  The videos celebrated and promoted pimping and prostitution activity and the defendants' success as pimps.  Although some of the videos had prejudicial content, their prejudicial impact was largely cumulative of the prejudicial impact of other evidence in the case, including expert testimony, a video introduced by Banks himself, photographic still images, and text messages.  Accordingly, it was not an abuse of discretion for the district court to conclude that

4

the videos' probative value was not substantially outweighed by their prejudicial effect. FED. R. EVID. 403.[2]

The defendants contend the videos were also improper character evidence under Rule 404. Acts falling "within the temporal scope" of a conspiracy that actually comprise the conspiracy are not subject to Rule 404, since they are "inextricably intertwined" with the offense. *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004). The district court did not violate Rule 404 in admitting the videos.

Turning to the other issues raised by the defendants, we conclude that none warrants relief. They argue that the indictments should have been dismissed due to prejudicial preindictment delay because Officer Cottle, who was tasked with investigating their activity in 2001, was killed in overseas combat, and because videotaped statements by sex trafficking victims taken at the time of the investigation were also destroyed. But the defendants do not explain how the lost evidence would have benefitted either or both of them. They merely ask us to

---

[2]The defendants argue that the district court erred because it failed to view the videos and therefore to engage in the proper balancing analysis. Although the trial record suggests that the district court may have initially ruled on the defendants' motions *in limine* without viewing the videos, the record also reflects that the district court offered to revisit the issue in response to appropriate objections later, and does not indicate that the court failed to review the videos in advance of their formal admission.

assume it would have. To prevail on that claim, however, the defendants must demonstrate "actual, non-speculative prejudice from the delay." *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007). Moreover, the defendants were able to cross-examine Officer Cottle's partner at the time, Officer Scallon, and the three victims of the incident. The district court did not abuse its discretion in denying the defendants' motion to dismiss the indictment. The preindictment delay was not unduly prejudicial.

The defendants further argue that prosecution of Counts 2 to 5, which relate to sex trafficking offenses the defendants were charged with committing in 2000 and 2001, violated both the Jencks Act, 18 U.S.C. § 3500, and *California v. Trombetta*, 467 U.S. 479, 485 (1984), given the loss of the evidence contained in the videotaped statements taken at the time. But the federal government was never in possession of the videotapes, so the routine destruction of those tapes by local officials did not violate the Jencks Act. *See* 18 U.S.C. § 3500(b); *United States v. Higginbotham*, 539 F.2d 17, 21 (9th Cir. 1976). A fortiori, because there is no indication in the record that the federal government acted in bad faith, there is no due process violation. *See Trombetta*, 467 U.S. at 488. The district court therefore correctly denied the motion to dismiss the indictment.

6

The district court also correctly denied the motion to dismiss Counts 2 to 5 as untimely under the statute of limitations in effect before the 2003 and 2006 amendments extending the statute under which the defendants were charged. Because Congress evinced a clear intent to extend the statute of limitations for these types of crimes in its amendments, and because there is no *ex post facto* problem here, the prosecution was timely. *United States v. Leo Sure Chief*, 438 F.3d 920, 924 (9th Cir. 2006).

Brown argues that the district court erred in denying his motion to dismiss Count 2 because he previously pleaded guilty to the same conduct in state court. A single act that violates the laws of two separate sovereigns, however, can be two separate crimes, and separate prosecutions by each sovereign do not violate the Double Jeopardy Clause. *See United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002). The district court correctly denied the motion.

Banks argues that the district court should have suppressed evidence obtained as a result of a 2001 traffic stop because it was obtained in violation of his Fourth Amendment rights. When the investigating officers pulled him over, Banks was driving without a license, an offense under California law. The officers therefore had probable cause to detain him. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010). And because after a driver is

7

detained, police officers may impound vehicles that "jeopardize public safety and the efficient movement of vehicular traffic," *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005), the 30-minute seizure of Banks that occurred while the police officers figured out what to do with his vehicle was not unreasonable. The district court properly denied Banks's motion.

Relying on *Scales v. United States*, 367 U.S. 203 (1961), the defendants assert that 18 U.S.C. § 1962(d), as interpreted by the Supreme Court in *Salinas v. United States*, 522 U.S. 52 (1997), is unconstitutionally overbroad, because it punishes membership in a RICO enterprise without proof of knowledge or specific intent. But *Salinas* itself explained that a RICO enterprise charge requires proof that a RICO conspirator "knew about and agreed to facilitate the scheme." 552 U.S. at 66. RICO association-in-fact charges do not raise the due process concerns that the defendants identify.

Nor did the district court err in instructing the jury on the RICO charge. The jury instructions were adequate as to the need to prove the defendants' participation.

Banks has not identified an error in the admission of the spreadsheet summarizing his text messages. The spreadsheet was properly admitted under Federal Rule of Evidence 1006, because it summarized thousands of Banks's text

8

messages.  The district court also properly found that the text messages were not hearsay under Federal Rule of Evidence 801(d)(2)(e) because the text messages admitted were between Banks and other RICO co-conspirators during the charged conspiracy.

Brown argues it was improper to admit the tax returns under Federal Rule of Evidence 404(b).  The trial record contains no evidence the returns were fraudulent, and even if they were, there was no prejudice given that Brown's position is that he filed no returns.  There is no question he avoided paying taxes.

The defendants argue that expert testimony about pimping and gang activity was improper under Federal Rule of Evidence 702.  "A district court's rulings on the admissibility of expert testimony are reviewed for . . . abuse of discretion," and will be reversed only if they are "manifestly erroneous." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).  Because the details of pimping are not common knowledge, it was not an abuse of discretion to admit the expert testimony about pimping and prostitution. *See United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001).  Nor did the testimony of case agent Detective Johnson contain improper opinion testimony under Rule 701; he gave lay opinions rationally based on his personal knowledge of the case. *United States v. Gadson*, 763 F.3d 1189, 1209–1210 (9th Cir. 2014).  And gang expert Detective Resch,

who based his testimony on experience similar to that which we have previously approved as a basis for gang expertise, *see United States v. Hankey*, 203 F.3d 1160, 1168-70 (9th Cir. 2000), did not testify in a dual capacity. His use of such prefatory statements as "in my opinion" or "as far as I could tell" do not indicate otherwise, and his identifications of gang members relied at least in part on his specialized knowledge and on the type of evidence on which such experts typically rely. *See id.* at 1169–70.

Banks also argues that the expert testimony about pimping and prostitution from Detective Drilling was impermissible character evidence admitted in violation of Federal Rule of Evidence 404(a) and unduly prejudicial in violation of Federal Rule of Evidence 403. Because Banks did not object to this testimony on Rule 404 grounds at trial, we review that issue for plain error. *United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011).

Experts may offer testimony about general behavioral characteristics of a class of victims to help a jury understand the charged offense. *See United States v. Hadley*, 918 F.2d 848, 852–853 (9th Cir. 1990). It was not plain error for the district court to allow this testimony about pimping and prostitution. The expert testimony here was not unduly prejudicial because we have held that testimony about "the relationships between pimps and prostitutes" helps jurors in assessing

10

witness credibility. *United States v. Brooks*, 610 F.3d 1186, 1195–96 (9th Cir. 2010). There was no abuse of discretion in admitting this testimony under Rule 403.

The defendants argue that the testimony of Yasenia Armentero was perjured because of prior inconsistent statements. Brown used many of the statements for impeachment purposes; there is no basis for us to conclude Armentero's testimony was perjured. *See Audett v. United States*, 265 F.2d 837, 847 (9th Cir. 1959). The defendants also contend that their Sixth Amendment rights were violated when Armentero refused to answer all of their questions. The witness eventually provided answers to all the questions. There was no error.

The defendants further argue that the district court's admission of testimony from minor victim witness Ariane U. violated due process because of substantial government interference and that the district court improperly limited cross-examination of this witness. "Whether substantial government interference occurred is a factual determination . . . that we review for clear error." *United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998). Warning the victim of the consequences of perjury, which is all the district court found occurred here, "does not unduly pressure the witness's choice to testify or violate the defendant's right to due process." *Williams v. Woodford*, 384 F.3d 567, 603 (9th Cir. 2004). The

district court did not err in making that determination, and there was no due process violation in admitting this testimony. Nor was there an abuse of discretion in limiting cross-examination on account of Ariane U.'s privilege to attorney-client communications.

Minor victim Kara M.'s 2001 adopted statement was admissible as a past recollection recorded. Because she had previously signed the document and affirmed its accuracy in her limited testimony, it was not an abuse of discretion for the district court to find that it constituted an adopted statement. *See United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 (9th Cir. 2002). Nor did admitting that statement violate the Confrontation Clause, because Rule 803(5) does not require further cross-examination of a witness once a statement is properly admitted as a past recollection recorded. *See United States v. Marshall*, 532 F.2d 1279, 1285–86 (9th Cir. 1976). Banks had a full opportunity to cross-examine Kara M. on her limited recollections about the accuracy of the statement.

Brown charges prosecutorial misconduct on several grounds, but does not identify any resulting prejudice by or indeed any error on the part of the district court.

Cumulative error does not warrant reversal; the defendants have not demonstrated that the district court committed any prejudicial error.

**AFFIRMED.**